259 P.2d 1028

**BOARD OF EDUCATION OF GALLUP MU-
NICIPAL SCHOOL DIST. NOS. 3 & 4,
McKINLEY COUNTY, v. ROBINSON,
Atty. Gen.**

No. 5685.

Supreme Court of New Mexico.

July 15, 1953.

John E. Perry, Gallup, for relator.

Richard H. Robinson, Atty. Gen., Fred M. Standley and Walter R. Kegel, Asst. Attys. Gen., for respondent.

SADLER, Chief Justice.

The Board of Education of Gallup Municipal School District Nos. 2 and 3, as relator, seeks by mandamus to compel the respondent, Richard H. Robinson, as Attorney General, to approve the proceedings purporting to authorize bonds in the total sum of $82,000.00 for the purpose of erecting and furnishing school buildings in Municipal School District Nos. 3 and 4 in McKinley County. The respondent declined to give approval to the proceedings upon the ground they were fatally defective for reasons hereinafter stated.

The proceedings were initiated by presentation to the board of education of the municipal school district a petition requesting it to call a special school bond election to vote on the following proposal, to-wit:

"1. Shall the School District vote its bonds in the total sum of $82,000.00? The said bonds to be issued for the following purposes:

(a) Erecting and furnishing school buildings in said District.

(b) Purchase of or improvement of school grounds.

(c) Modernization and additions to existing school buildings."

The board of education acted favorably on the petition and after publication of a notice stating the question to be voted on as quoted above from the petition, submitted the question on the ballot in a slightly altered form, as follows:

"For the issuance of bonds of the Districts in the total sum of $82,000.-00 for the erection and improvement of school buildings and the purchase or improvement of school grounds. * * *

"Against issuance of bonds of the Districts in the total sum of $82,000.00 for the erection and improvement of

school buildings and the purchase or improvement of school grounds. * * * "

At the election which followed a majority vote was cast in favor of the bond issue which was duly canvassed and certificate thereof published; as required by law, on April 13, 1953. No action of any kind was filed in the District Court of McKinley County, prior to the day set for the election, attacking the validity of the petition for the election nor any proceedings subsequent thereto within the time prescribed therefor, nor at all, as provided by 1941 Comp. § 55–731. The time for filing any such attack on the proceedings, either antedating or post-dating the petition, has now long since expired.

It also appears from allegations of the petition for the writ, and is not disputed, that the relator has on hand the sum of $100,000.00 which together with proceeds of the bond issue of $82,000.00 and federal grant in aid of $159,000.00, it proposes to use in the construction of a new high school building. The district is within $82,000.00 of its debt limit and without the federal aid contemplated it will be impossible for the district to construct a new high school building for some indefinite time in the future for which there is emergent need. The State Treasurer of New Mexico has agreed to purchase the bonds when and if the Attorney General, relator, gives his approval of the bond election proceedings. He has declined approval on the ground that two of the purposes set forth in the petition, (b) and (c), violate state Const. art. 9, § 11, which so far as material reads:

"No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds, and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district as are owners of real estate within such school district, and a majority of those voting on the question shall have voted in favor of creating such debt."

It is to be noted that the petition for the election and the notice thereof published as prescribed by law contained three proposals one of which is within the purposes authorized by the constitution, namely, purpose (a) to authorize the "erecting and furnishing of school buildings" in said district; whereas two of them, (b) authorizing the improvement of school grounds and (c) the modernization and additions to existing school buildings, are without the constitution. Likewise the ballot, though omitting use of the word "modernization" in relation to existing school buildings, stated one good and one bad purpose of the bond issue, namely, (a) the erection of school buildings and (b) the improvement

of school buildings and grounds. Counsel for the district makes no effort to defend purposes (b) and (c) set forth in the petition and carried forth on the ballot in modified form. He frankly admits both are vulnerable as being beyond and outside constitutional authorization. He seeks to avoid the deadly effect of their inclusion as stated purposes by invoking the curative effect of 1941 Comp. §§ 55–731 and 55–732. His argument fails to convince us.

We see no distinction in principle between this case and our decision in Tom v. Board of County Commissioners of Lincoln County, 43 N.M. 292, 92 P.2d 167, 169. True enough, we there dealt with other constitutional and statutory provisions, the ones authorizing the issuance of bonds by counties for the erection of a court house and jail. But the controlling principles are the same. The question involved was presented in the opinion and ruled upon, as follows:

"The order should have provided for, and the publication given notice of, the proposed issuance of bonds, the proceeds of which were to be used for the erection or building of a court house and jail. The Constitution prohibits either the remodeling or repairing of public buildings by the use of funds so obtained. The resolution and notice are defective and ambiguous, in that they indicate that the proceeds of the bonds will be used for erecting a

court house and jail, an authorized use of the funds; and at the same time that they will be used for remodeling and repairing an existing court house and jail, an unauthorized use.

\*    \*    \*    \*    \*    \*

"In obtaining funds by issuing bonds for erecting public buildings, there must be a substantial compliance with the Constitution and laws requiring notice to the interested electorate, of the purpose for which the funds are to be used, which purpose must be authorized by law, and not be within the inhibition of the Constitution; and by giving the electorate an opportunity to approve or disapprove the issuance of the bonds, at an election held for that purpose.

"The question of whether the use of the funds, after they are obtained, is consistent with the purpose for which the bonds are issued, would arise in a different character of action, such as one to enjoin a threatened unlawful use."

Wherein is there any distinction on principle between that case and this? We see none. Counsel, to be sure, would find distinction in the reliance placed by him on curative effect of the sections of the statute mentioned above. The argument is faulty in that duality of purpose submitted

to the electorate invokes no protection from these statutes if one of those purposes is proscribed by the constitution. In other words, the healing effect of these statutes is inoperative to validate the submission of two questions one of which is within and the other without the limitations found in Const. art. 9, § 11. The proceedings in such circumstances must stand or fall without the aid of the curative statutes.

We have never held that the curative statutes in question are effective to validate constitutional defects made the basis of a challenge to validity of the proceedings. On the contrary, we have more than once indicated they do not have such effect. In White v. Board of Education of Silver City, 42 N.M. 94, 75 P.2d 712, 716, involving a school bond election, we said:

"The objection points out no constitutional defect in the proceedings and, if valid, should have been urged within the time limited by the statute."

Speaking along the same line in Board of Education of School Dist. No. 5 in San Juan County v. Patton, 43 N.M. 107, 86 P.2d 277, 278, we said:

"From the foregoing it appears that the rule adopted with reference to this statute is that mere regulatory provisions of the exercise of the right or power to borrow money and which do not render the proceedings a nullity are controlled by the limitation statute quoted above."

Writing in the same vein in Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027, 1031, we said:

"We now hold that, where power resides in school districts to borrow money and issue bonds therefor at all, *these statutory provisions*, after the time limited, protect the proceedings against attack for invalidity as well as for irregularity, *except upon constitutional grounds*. 1 Jones on Bonds and Bond Securities, 4th Ed., p. 358, § 347; State ex rel. Board of Education v. Brown, 97 Minn. 402, 106 N.W. 477, 5 L.R.A.,N.S., 327; Anderson v. Township of Santa Anna, 116 U.S. 356, 6 S.Ct. 413, 29 L.Ed. 633." (Emphasis added.)

We are unable to agree with relator's counsel that there is here no constitutional question involved. The electorate were asked to vote upon the question of money for (1) erecting and furnishing a school building, which was within the constitution and (2) for the improvement of school buildings and grounds which was without the constitution. The duality of the questions presented thus denied the voters the right of free expression in a referendum enjoined by the constitutional provision involved on the single valid question embraced in the submission. Lani-

gan v. Town of Gallup, 17 N.M. 627, 131 P. 997; Kiddy v. Board of County Commissioners of Eddy County, 57 N.M. 145, 255 P.2d 678; Carper v. Board of County Commissioners of Eddy County, 57 N.M. 137, 255 P.2d 673. See, also, Board of Commissioners of Guadalupe County v. State, 43 N.M. 409, 94 P.2d 515.

■ The test laid down as to what can be and what cannot be foreclosed by limitation or validating statutes in matters of this kind is discussed at some length in our opinion in White v. Board of Education of Silver City, supra. We quoted approvingly from Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, on this subject. Suffice it to say that the legislature "in the first instance" could not, if it would, waive, ignore or disregard the constitutional proviso limiting the power in a school district to borrowing money "for the purpose of erecting and furnishing school buildings or purchasing school grounds". Here the qualified voters proposed to borrow it for that purpose and also the *"improvement* of school buildings" and *"improvement* of school grounds." We can not separate the *good* from the *bad,* as counsel would have us do. That must be done before the event, not afterward and by the governing board, not by us.

■■ It is suggested by counsel for relator that we sustain the valid portion of the proceedings and to evidence good faith on its part it offers to consent to an injunction restraining use of any of the proceeds of the bond issue for purposes proscribed by the constitution. This is a matter, however, that would properly arise in another proceeding when any diversion of the funds was attempted. Tom v. Board, supra, and Board (Guadalupe County) v. State, supra. Moreover, this would in no way validate the proceedings and much as we may sympathize with the laudable desire of the municipal board to secure the federal aid in grant and proceed with its construction plans, we have no power by forced construction to aid them in achieving this desire. As said by this Court in Board of County Com'rs of Guadalupe County v. State, supra [43 N.M. 409, 94 P. 2d 520]:

"The court has no power by construction to enlarge the scope of constitutional provisions beyond their intent even to correct situations which the courts may believe should be remedied.

\* \* \* \* \* \*

"We are in sympathy with the aspirations of the county authorities and the electors who desire to improve the county courthouse but we cannot depart from what we think to be the law of the case however pressing the emergency may be."

It follows from what has been said that the alternative writ was improvidently issued and should now be discharged and the petition dismissed.

It is so ordered.

COMPTON, LUJAN, and SEYMOUR, JJ., concur.

McGHEE, J., not participating.