2003-NMSC-020

74 P.3d 73

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Martin LYNCH, Defendant–Appellant.**

No. 26,252.

Supreme Court of New Mexico.

July 9, 2003.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

MINZNER, Justice.

{1} Defendant appeals from an order of the district court denying his motion to dismiss an amended criminal information charging him with first-degree murder. Defendant contends the district court erred in ruling that the district attorney's decision to charge him with first-degree murder, following the Court of Appeals' reversal of his conviction for second-degree murder, was not contrary to federal and state constitutional protections against double jeopardy and prosecutorial vindictiveness. Defendant initially appealed the order of the district court to the Court of Appeals. *See State v. Apodaca*, 1997–NMCA–051, ¶ 17, 123 N.M. 372, 940 P.2d 478 (holding defendant has a constitutional right to appeal from an order denying a double jeopardy objection to an indictment). The Court of Appeals certified the matter to us on the ground that language in *State v. Martinez*, 120 N.M. 677, 678, 905 P.2d 715, 716 (1995), appeared to be inconsistent with the portion of Article II, Section 15 of the New Mexico Constitution that provides protection against double jeopardy. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) (holding that the Court of Appeals is bound by Supreme Court precedent); NMSA 1978, § 34-5-14(C) (1966). We accepted certification and now reverse the district court's order denying Defendant's double jeopardy claim. We do not reach the issue of prosecutorial vindictiveness.

I

{2} The following facts appear to be undisputed. In April 1996, Defendant and Kim Gurley, who was then separated from her husband Richard Gurley, were living together. On the night of April 15, Defendant and

Richard argued during a telephone conversation. Following this argument, Richard and his brother drove to the house where Defendant and Kim were living. Richard pounded on the door and front windows, yelling for Defendant to come out and fight. After the door to the home was opened, Richard grabbed Defendant and pulled him from the house, throwing him to the ground. The two men exchanged punches. Defendant fatally stabbed Richard during the fight.

{3} The State filed a criminal complaint that night, which described the crime as "Murder in the First Degree Open Charge," and stated that Defendant had killed Richard "by an act greatly dangerous to the lives of other[s]." *See* NMSA 1978, § 30–2–1(A)(3) (1994). At the preliminary hearing, however, the magistrate judge bound Defendant over for trial on the offense of second-degree murder. On April 30, 1996, the State filed a criminal information charging Defendant with second-degree murder, contrary to Section 30–2–1(B).

{4} Defendant was tried before a jury in January 1997, and convicted of second-degree murder. Defendant successfully appealed his conviction. *State v. Lynch*, No. 18,368, slip op. (N.M.Ct.App. Dec. 16, 1998). The Court of Appeals reversed Defendant's conviction on the ground that the district court's denial of a requested instruction on self-defense or defense of a dwelling as an element of the second-degree murder instruction was potentially confusing to the jury, contrary to *State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994). *Lynch*, No. 18,368, slip op. at 5.

{5} On remand to the district court, Defendant was scheduled to be retried for second-degree murder on July 19, 1999. On defense counsel's motion, trial was continued until September 27, 1999. The prosecutor then spoke with Ginger Dickinson, the girlfriend of Kim Gurley's step-father, for the first time. In that interview, Dickinson said that prior to the killing she had heard Defendant say that he had learned in prison how to kill a person by stabbing him with a single thrust and that he was going to kill Richard in this way. On August 6, 1999, the State filed an amended criminal information charging Defendant with premeditated first-degree murder, contrary to Section 30–2–1(A).

{6} Defendant filed a motion to dismiss the first-degree murder charge, alleging that the charge violated his double jeopardy rights and constituted prosecutorial vindictiveness. The district court denied Defendant's double jeopardy claim without a hearing. However, the court ordered an evidentiary hearing on the claim of prosecutorial vindictiveness, reasoning that the circumstances surrounding the State's filing of a greater charge against Defendant—more than three years after the offense was committed and following a successful appeal—raised a presumption of prosecutorial vindictiveness. Following the hearing, the court determined that the State had overcome the presumption of prosecutorial vindictiveness by proving that newly-discovered evidence led to the filing of the greater charge against Defendant. Defendant subsequently moved twice for reconsideration of the court's denial of his double jeopardy claim. The court denied both motions.

{7} Defendant appealed the district court's denial of his double jeopardy claim to the Court of Appeals. In certifying this matter, the Court of Appeals noted that Defendant's double jeopardy argument appeared meritorious based on the plain language of Article II, Section 15 of the New Mexico Constitution, but was inconsistent with this Court's interpretation of the substantially similar double jeopardy statute, NMSA 1978, § 30–1–10 (1963), in *Martinez*. *State v. Lynch*, No. 21,108 (N.M.Ct.App. Mar. 23, 2000) (order certifying matter to the Supreme Court). In *Martinez*, we stated that the language upon which Defendant now relies precludes retrial of a greater offense "only after an acquittal of that offense." 120 N.M. at 678, 905 P.2d at 716.

## II

{8} Under *State v. Gomez*, 1997–NMSC–006, 122 N.M. 777, 932 P.2d 1, we first analyze Defendant's double jeopardy claim under the federal constitution. If Defendant's rights are protected under the federal constitution, we will not examine Defendant's state constitutional claim. *Id.* ¶ 19. If

the federal constitution does not protect the asserted right, we analyze Defendant's claim under the state constitution. *Id.*

## III

{9} The federal double jeopardy clause has been said to embody three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *See, e.g., Justices of Boston Mun. Court. v. Lydon,* 466 U.S. 294, 306–07, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). In discussing the policies which underlie the double jeopardy clause, the United States Supreme Court has stated:

The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Serfass v. United States,* 420 U.S. 377, 387–88, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

■■ {10} The amended information is not a second prosecution for the same offense after acquittal under the federal double jeopardy clause. The jury did not acquit Defendant of first-degree murder; that charge was dismissed before trial started. *Serfass,* 420 U.S. at 391, 95 S.Ct. 1055 (stating that "the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused'")

(quoting *Kepner v. United States,* 195 U.S. 100, 133, 24 S.Ct. 797, 49 L.Ed. 114 (1904)). Nor would Defendant's conviction on second-degree murder charges impliedly acquit Defendant of first-degree murder, because second-degree murder was the highest degree of crime charged against him. This is analogous to *Montana v. Hall,* 481 U.S. 400, 403–04, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987), where the United States Supreme Court held that a defendant who had been convicted under a statute not yet in effect at the time of the alleged conduct could be retried after reversal on appeal for a related offense. *See also Lowery v. Estelle,* 696 F.2d 333, 340–42 (5th Cir.1983) (holding that a conviction for a lesser offense that is subsequently set aside on appeal does not prevent prosecution of a greater charge not considered at the first trial, because there had been no acquittal of the greater offense at the first trial); *cf. Green,* 355 U.S. at 191, 78 S.Ct. 221 (holding that the double jeopardy clause prohibits retrial on an offense of which a defendant has been impliedly acquitted in a previous trial). The amended information also does not involve a second prosecution "for an allegedly different offense in the face of ... an unreversed conviction for another offense arising out of the same transaction," *United States v. Ewell,* 383 U.S. 116, 124, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), because Defendant's conviction for second-degree murder has been reversed. Finally, Defendant has not been punished more than once for the same offense.

■ {11} The amended information does not implicate any of the three protections embodied in the federal double jeopardy clause. In addition, prosecuting Defendant for first-degree murder does not add to the number of trials Defendant may be required to face. *See, e.g., United States v. Scott,* 437 U.S. 82, 90–91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (holding that the double jeopardy clause does not bar a second trial where a defendant has successfully appealed his or her conviction of an offense on grounds other than insufficiency of the evidence). Therefore, requiring Defendant to face first-degree murder charges does not greatly increase the expense or ordeal associated with trial. For

these reasons, we conclude that retrial of Defendant for first-degree murder does not violate the federal double jeopardy clause.

### IV

#### A

{12} Article II, Section 15 of the New Mexico Constitution reads:

> No person shall be compelled to testify against himself [or herself] in a criminal proceeding, nor shall any person be twice put in jeopardy for the same offense; and when the indictment, information or affidavit upon which any person is convicted charges different offenses or different degrees of the same offense and a new trial is granted the accused, he [or she] may not again be tried for an offense or degree of the offense greater than the one of which he [or she] was convicted.

We also have a double jeopardy statute, which similarly reads:

> When the indictment, information or complaint charges different crimes or different degrees of the same crime and a new trial is granted the accused, he [or she] may not again be tried for a crime or degree of the crime greater than the one of which he [or she] was originally convicted.

Section 30–1–10. Defendant contends that the final clause of Article II, Section 15 and Section 30–1–10 bar the State from trying him for first-degree murder following his successful appeal.

■ {13} Before analyzing the merits of Defendant's claim under Article II, Section 15 of the New Mexico Constitution, we determine whether Defendant properly preserved this claim as required by Rule 12–216(A) NMRA 2003. Under *Gomez*, 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1, we must first determine whether the provision under which the claim is made has been held to provide greater protection than its federal counterpart. In order to preserve a claim based on a state constitutional provision that has not been interpreted more broadly than its federal analog, a party must give the trial court an opportunity to rule on the claim by "assert[ing] *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provid[ing] reasons for interpreting the state provision differently from the federal provision." *Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1. Though Article II, Section 15 has been interpreted to provide greater protection than its federal counterpart in certain areas, *see State v. Nunez*, 2000–NMSC–013, ¶ 30, 129 N.M. 63, 2 P.3d 264 (successive prosecutions); *State v. Breit*, 1996–NMSC–067, ¶ 32, 122 N.M. 655, 930 P.2d 792 (prosecutorial misconduct), it has not previously been construed to provide greater protection than its federal counterpart in the circumstances of this case. Defendant was therefore required at trial to argue that Article II, Section 15 provided greater protection than the federal double jeopardy clause and provide reasons for interpreting Article II, Section 15 differently than the federal double jeopardy clause.

■ {14} We conclude that Defendant preserved this claim. In Defendant's motion for reconsideration, he specifically alleged that distinct language within the state constitutional provision justified interpreting it differently than the federal double jeopardy clause. His motion quoted the final clause of Article II, Section 15, which is distinct from the language in the federal double jeopardy clause. This motion and his prior motion provided the factual basis necessary for the trial court to rule on this issue.

#### B

■ {15} Interpretation of constitutional clauses begins with the language of the text. Where the constitutional clause is clear and unambiguous on its face, courts will not construe the clause. *See, e.g., Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420, 427 (2000) ("Like statutes, constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and therefore construction is necessary."). The text of the relevant portion of Article II, Section 15 states:

[A]nd when the indictment, information or affidavit upon which any person is convicted charges different offenses or different degrees of the same offense and a new trial is granted the accused, he [or she] may not again be tried for an offense or degree of the offense greater than the one of which he [or she] was convicted.

The Court of Appeals, in certifying this case to this Court, indicated its belief that the plain language of the text conferred upon Defendant a clear and unambiguous right to not be retried for an offense greater than second-degree murder. *See State v. Lynch*, No. 21,108. We agree with the Court of Appeals that our state constitution confers this right upon Defendant, although the wording of the provision at issue is susceptible to different interpretations.

{16} The State argues that the phrase "again be tried" in Article II, Section 15 means that a defendant cannot be tried a second time on charges brought in the first trial for greater degrees of the offense than the defendant was convicted. Under this construction, the word "again" refers to any charges brought under the original indictment or information, so, if the original charges did not include the greater degree of offense, then there would be no bar to prosecution of that offense on retrial. We disagree. The phrase "again be tried" refers to any subsequent prosecution, regardless of whether the greater offense was charged in the original trial.

{17} This reading of Article II, Section 15 is consistent with *Martinez*. Our statement in *Martinez*, 120 N.M. at 678, 905 P.2d at 716, that Section 30–1–10 "precludes retrial of a greater offense only after an acquittal of that offense" was not intended to introduce a new principle of law into our double jeopardy jurisprudence. Instead, we were summarizing existing case law, as evidenced by our cite to *State v. Sneed*, 78 N.M. 615, 617, 435 P.2d 768, 770 (1967). In *Sneed*, we noted that the defendant's case did not involve "a situation where the defendant was acquitted of a crime or a greater degree of the crime at a prior trial," and concluded that "[t]he constitutional protection against double jeopardy does not prevent a second trial for the same offense when the defendant himself, by an appeal, has invoked the action which resulted in the second trial." 78 N.M. at 617, 435 P.2d at 770. Our statement in *Martinez*, relying on *Sneed*, was intended to do no more than summarize that holding. In retrospect, our description of *Sneed* in *Martinez* as establishing the principle that Section 30–1–10 "precludes retrial of a greater offense only after an acquittal of that offense," overstated the holding in *Sneed*. We now take this opportunity to clarify that we intended only to reiterate the holding in *Sneed*.

{18} Our holding in *Martinez* was based on the long-settled notion that the right to be free from double jeopardy is not an absolute right. *See County of Los Alamos v. Tapia*, 109 N.M. 736, 742, 790 P.2d 1017, 1023 (1990); *State v. Saavedra*, 108 N.M. 38, 41, 766 P.2d 298, 301 (1988). A defendant's right to be free from double jeopardy may at times be "subordinated to the countervailing interest of society in the orderly administration of justice." *Tapia*, 109 N.M. at 742, 790 P.2d at 1023. At the core of the public's interest in the orderly administration of justice is its interest in having the guilty punished after a fair trial. *See id.* It is the public's strong interest in seeing the guilty punished after a fair trial that allows the State to reprosecute a defendant who has successfully appealed his or her conviction on the basis of trial error, *see United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) ("While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain [this] principle are the implications of that principle for the sound administration of justice."), or where a mistrial is ordered as a matter of "manifest necessity," *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). In *Martinez*, the jury was unable to reach a unanimous verdict on the attempted murder charge, thereby creating a "manifest necessity" for a mistrial. 120 N.M. at 679, 905 P.2d at 717. In addition, it was defense counsel who requested the declaration of a mistrial on the attempted murder charge. *Id.* According to long-es-

tablished United States Supreme Court precedent, "a defendant's motion for or consent to a mistrial generally forecloses any claim of double jeopardy." *Id.*

■ {19} The statement in *Martinez* that may appear to be inconsistent with Article II, Section 15, and Section 30–1–10–when considered in isolation should not be taken out of context. After the statement that Section 30–1–10 "precludes retrial of a greater offense only after an acquittal of that offense," we further explained that "[w]e do not construe Section 30–1–10 to address the situation in which the state prosecutes various crimes or degrees of crimes and the jury *returns a verdict on less than all of the crimes charged.*" *Martinez,* 120 N.M. at 678, 905 P.2d at 716 (emphasis added). Taken together, these two statements stand for the proposition that Section 30–1–10 precludes retrial of a greater offense only after an (implied or explicit) acquittal of that offense, provided that the greater offense was charged in the first trial. The holding in *Martinez* does not cover situations like the present one, where the greater offense was *not charged* in the first trial. Thus, the limitation placed on Section 30–1–10 in *Martinez* is irrelevant to our present inquiry. Perhaps the formulation in *State v. Manzanares,* 100 N.M. 621, 622, 674 P.2d 511, 512 (1983), that "in New Mexico, a defendant may not be tried in a second trial for a greater offense which would require the presentation of all of the evidence which was used in a first trial on a lesser included offense" states the standard more clearly.

{20} The facts in this case are very different from the facts in *Martinez.* In *Martinez,* the defendant contended that the State could not prosecute him a second time on a charge on which the jury was unable to reach a verdict in the first trial. In rejecting this claim, we stated that "[t]he State is entitled to a verdict on all charges presented in the same prosecution." 120 N.M. at 679, 905 P.2d at 717. The jury did not "return[ ] a verdict" as to the attempted murder charge because it was unable to unanimously agree regarding that charge. If the jury had unanimously decided that the defendant was not guilty of attempted murder, then the jury

would have "return[ed] a verdict" as to that charge, thus implicating the protections of Section 30–1–10 as well as the federal constitution. In this case, the jury did return a verdict as to all of the crimes charged in the first trial. Defendant contends that the State may not prosecute him for first-degree murder after not prosecuting him on that charge at all in the first trial. Defendant does not seek to prevent the State from receiving "a verdict on all charges presented in the same prosecution." *Id.* Rather, Defendant seeks to prevent the State from adding a new and greater charge in a second prosecution.

### C

■ {21} The conclusion we reach today that Defendant may not be tried for first-degree murder upon remand to the district court is supported even more strongly by the wording of Section 30–1–10. Although the statute is largely identical to Article II, Section 15, there are some subtle differences which counsel in favor of holding that Defendant's double jeopardy rights would be violated by prosecution for first-degree murder. As a general proposition, statutes may provide greater, but not less, protection to individual rights than the constitution. *Cf. United States v. Baker,* 63 F.3d 1478, 1496–97 (9th Cir.1995) (holding that the Sixth Amendment to the United States Constitution provides a minimum level of protection which Congress may expand through legislation); *see also Dillon v. King,* 87 N.M. 79, 85, 529 P.2d 745, 751 (1974) ("Our basic premise is that the [New Mexico] Constitution is the supreme law and each department of government must comply with it."). Applied to the present case, we interpret Section 30–1–10 to provide the same protections as Article II, Section 15, although those protections are more clearly stated in the statute.

{22} Section 30–1–10 states that "[w]hen the indictment, information or complaint charges different crimes or different degrees of the same crime and a new trial is granted the accused, he [or she] may not again be tried for a crime or degree of the crime greater than the one of which he [or she] was originally convicted." The statute omits the

phrase "upon which any person has been convicted" following "indictment" at the beginning of the sentence, and adds the word "originally" before "convicted," at the end of the sentence. These changes suggest that the Legislature was attempting to articulate the protections of Article II, Section 15 as being broader than those of the federal constitution. In deleting the reference to the indictment "upon which" the conviction was obtained, the statute may refer to indictments other than the one upon which the original trial was founded. Further, in describing the conviction that sets the ceiling of the offense as the degree of the "original," the Legislature may have intended to refer to an "initial" or "first" conviction, rather than a conviction under a particular indictment. This makes the phrase "again be tried" less ambiguous. The first portion of the statutory provision applies in this case to the current indictment, the one Defendant objected to in district court. It follows that because he has been granted a new trial, he satisfies the middle portion of the statutory provision. The statute says, more clearly than the constitutional provision, that the new trial ought not concern an offense of a greater degree than the degree of which he had been convicted at the prior trial. The statute can be read in the present, referring to the current indictment and the prospective trial, and so read it limits the scope of that prospective trial, rather than as referring to the indictment upon which Defendant was convicted and providing that his protection against double jeopardy is limited to retrial under that indictment.

{23} As a historical note, there was another former jeopardy statute in effect prior to the current one. Section 30–1–10 was enacted as part of a complete re-write of the Criminal Code in 1963. The prior statute, NMSA 1941, § 42–705 (1853, repealed 1963), was repealed simultaneously. The text of that statute was quite different, and read as follows:

> No person shall be held to answer on a second indictment for an offense of which he has been acquitted by the jury, upon the facts and merits on a former trial, and such acquittal may be pleaded by him in bar of any subsequent prosecution for the same offense, notwithstanding any defect in the form or in the substance of the indictment on which he was acquitted.

*Id.* The prior statute specifically referred to and emphasized a prior *acquittal,* unlike the current statute or constitutional provision. The Legislature's choice to omit this term in the current version demonstrates that there should be times when double jeopardy attaches despite the fact that there was no acquittal, implied or otherwise, of the greater offense in the first trial.

**D**

{24} Our holding today should not be read to mean that there would be no bar to retrial on a higher count if the State chose to charge only one crime in the initial indictment, due to the fact that the constitutional provision applies when "the indictment, information or complaint charges different crimes or different degrees of the same crime." For example, if in the present case Defendant were only charged with second-degree murder, and no lesser-included offenses such as manslaughter, this would not operate to remove him from the protections of the constitution because Article II, Section 15 refers to plural charges. It is a well-established principle of statutory construction that words used in the plural subsume the singular. *See* NMSA 1978, § 12–2A–5 (1997); *State ex rel. Dresden v. Dist. Court,* 45 N.M. 119, 126, 112 P.2d 506, 510 (1941) (applying former version of same statute). The fact that we are interpreting the constitution, rather than a statute, in this instance, does not affect our analysis. The most important consideration for us is that we interpret the constitution in a way that reflects the drafters' intent. *See Hannett v. Jones,* 104 N.M. 392, 394, 722 P.2d 643, 645 (1986) ("While the rules of statutory construction govern as well the construction of constitutional provisions, we must bear in mind that such principles are merely aids to determining the intent and purpose of the framers."). Further, even if the prosecutor only charges one offense, the jury may consider any lesser included offenses as well. *See State v. Stephens,* 93 N.M. 458, 461, 601 P.2d 428 (1979), *overruled on other grounds by State v. Contreras,* 120

N.M. 486, 491, 903 P.2d 228, 233 (1995); Rule 5–611(D) NMRA 2003 ("If so instructed, the jury may find the defendant guilty of an offense necessarily included in the offense charged...."). Of course, this problem could not arise under our interpretation of Section 30–1–10, because we do not read the statute as being limited to referring to the original indictment. *See infra* ¶ 23.

**V**

{25} Defendant also challenges the district court's determination that the prosecution's filing of first-degree murder charges against him was not motivated by prosecutorial vindictiveness. Because we reverse Defendant's conviction on double jeopardy grounds, we need not address Defendant's prosecutorial vindictiveness argument. We also note that Defendant did not appeal this determination by the trial court, and this issue was not part of the Court of Appeals' certification order. Further, under federal law, the district court's decision was not a final order. *United ed States v. Hollywood Motor Car Co.*, 458 U.S. 263, 270, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982).

**VI**

{26} We reverse the district court's determination that trying Defendant for first-degree murder following his successful appeal of a conviction for second degree murder does not violate his rights under the state double jeopardy clause. We remand the case to the district court for proceedings consistent with this opinion.

{27} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON and EDWARD L. CHAVEZ, Justices.

PETRA JIMENEZ MAES, Chief Justice (dissenting).

PATRICIO M. SERNA, Justice (dissenting).

MAES, Chief Justice (Dissenting).

{28} Regretfully, I must dissent from the majority's conclusion that Article II, Section 15 of the New Mexico Constitution bars Defendant's trial on charges of first degree murder. I concur with the majority's analysis of the federal Constitution.

{29} Article II, Section 15 applies when a defendant has faced multiple charges, been convicted, and successfully overturned that conviction on appeal. N.M. Const. art. II, § 15. It provides that such defendants "may not again be tried for an offense or degree of the offense greater than the one of which he was convicted." *Id.* The Court of Appeals, in certifying this case to this Court, indicated its belief that the plain language of the text clearly and unambiguously established that Defendant could not face trial for any greater charges than those he faced in the first trial. As the majority has indicated, the question before us is the meaning of the phrase "again be tried." I believe the phrase "again be tried" is susceptible to two constructions. The majority concludes that the phrase refers to any subsequent prosecution, rather than the charges tried in the first trial, such that a defendant may not be tried for any offense or degree of offense greater than the one for which he or she was initially convicted. I disagree. I agree with the State that the phrase "again be tried" means that a defendant cannot be tried a second time on the *same charges brought in the first trial.* In other words, the clause only precludes retrial on those charges that were included in the indictment or information prior to the first trial. In my opinion, the plain text of Article II, Section 15 should not be read to bar Defendant's prosecution on charges of first degree murder.

{30} I begin my analysis with a discussion of the history behind Article II, Section 15, because I believe the history explains the purpose behind New Mexico's unique provision.

*Constitutional History*

{31} New Mexico's first Bill of Rights, promulgated in 1846 by Brigadier General Kearny, articulated protection against double jeopardy. The Kearny Bill of Rights provides, in relevant part: "That no person after having once been acquitted by a jury can be tried a second time for the same offense." *Kearny Bill of Rights,* cl. 8 (1846). After annexation, a movement for statehood result-

ed in a draft constitution; delegates assembled in Santa Fe in 1850 and soon after the Constitution of 1850 was ratified. *See* Chuck Smith, *The New Mexico State Constitution, A Reference Guide* 2–4 (1996). The Double Jeopardy Clause of the 1850 constitution was similar to the Double Jeopardy Clause of the Kearny Bill of Rights. It provides, in relevant part that "[n]o person, after acquittal, shall be tried for the same offence." N.M. Const. art. I, § 12 (1850). New Mexico's quest for statehood at that time was rejected by the U.S. Congress, which voted to make New Mexico a territory of the United States rather than a state. *See* Smith, *supra,* at 4; *see also* Organic Act Establishing the Territory of New Mexico (1850). As a territory of the United States, New Mexico became subject to the federal constitution. *See* Organic Act, § 17.

{32} During the late nineteenth century, other movements for statehood gathered momentum and state constitutions were drafted in 1872 and 1889. *See* Smith, *supra,* at 4–8. The Double Jeopardy Clause of the 1872 constitution utilized language similar to that found in the Fifth Amendment of the U.S. Constitution [1] and many other state constitutions,[2] providing, in relevant part that "[n]o person shall . . . be twice put in jeopardy for the same offense." N.M. Const. art. II, § 10 (1872). The drafters of the 1889 constitution used very similar language in their double jeopardy clause. That clause provides, in relevant part: "[N]or shall any person be twice put in jeopardy for the same offense." N.M. Const. art. II, § 4 (1889).

{33} In 1910, another constitution was drafted. This constitution would become the Constitution of the State of New Mexico. At the constitutional convention, the Committee on Bill of Rights proposed using the same language used in the 1889 version ("nor shall

---

1. The Fifth Amendment of the U.S. Constitution provides, in relevant part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

2. *See* Alaska Const. art. I, § 9 ("No person shall be put in jeopardy twice for the same offense."); Ariz. Const. art. II, § 10 ("No person shall . . . be twice put in jeopardy for the same offense."); Cal. Const. art. I, § 15 ("Persons may not twice be put in jeopardy for the same offense. . . ."); Del. Const. art. I, § 8 ("[N]o person shall be for the same offense twice put in jeopardy of life or limb. . . ."); Fla. Const. art. I § 9 ("No person shall . . . be twice put in jeopardy for the same offense. . . ."); Haw. Const. art. I, § 10 (Stating: "[N]or shall any person be subject for the same offense to be twice put in jeopardy. . . ."); Idaho Const. art. I, § 13 ("No person shall be twice put in jeopardy for the same offense. . . ."); Ill. Const. art. I, § 10 ("No person shall . . . be twice put in jeopardy for the same offense."); Kan. Const. Bill of Rights, § 10 ("No person shall . . . be twice put in jeopardy for the same offense."); Ky. Const. § 13 ("No person shall, for the same offense, be twice put in jeopardy of his life or limb. . . ."); Me. Const. art. I, § 8 ("No person, for the same offense, shall be twice put in jeopardy of life or limb."); Mich. Const. art. I, § 15 ("No person shall be subject for the same offense to be twice put in jeopardy."); Minn. Const. art. I, § 7 ("[N]o person shall be put twice in jeopardy of punishment for the same offense. . . ."); Miss. Const. art. III, § 22 ("No person's life or liberty shall be twice placed in jeopardy for the same offense. . . ."); Mont. Const. art. II, § 25 ("No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction."); Neb. Const. art. I, § 12 ("No person shall . . . be twice put in jeopardy for the same offense."); Nev. Const. art. I, § 8 ("No person shall be subject to be twice put in jeopardy for the same offense. . . ."); N.Y. Const. art. I, § 6 ("No person shall be subject to be twice put in jeopardy for the same offense. . . ."); N.D. Const. art. I, § 12 ("No person shall be twice put in jeopardy for the same offense."); Ohio Const. art. I, § 10 ("No person shall be twice put in jeopardy for the same offense."); Or. Const. art. I, § 12 ("No person shall be put in jeopardy twice for the same offence [sic]. . . ."); Pa. Const. art. I, § 10 ("No person shall, for the same offense, be twice put in jeopardy of life or limb. . . ."); R.I. Const. art. I, § 7 ("No person shall be subject for the same offense to be twice put in jeopardy."); S.C. Const. art. I, § 12 ("No person shall be subject for the same offense to be twice put in jeopardy of life or liberty. . . ."); S.D. Const. art. VI, § 9 ("No person shall . . . be twice put in jeopardy for the same offense. . . ."); Tenn. Const. art. I, § 10 ("[N]o person shall, for the same offence, be twice put in jeopardy of life or limb."); Utah Const. art. I, § 12 ("[N]or shall any person be twice put in jeopardy for the same offense."); Va. Const. art. I, § 8 ("[No person] shall . . . be put twice in jeopardy for the same offense."); Wash. Const. art. I, § 9 ("No person shall . . . be twice put in jeopardy for the same offense."); W. Va. Const. art. III, § 5 ("[N]or shall any person . . . be twice put in jeopardy of life or liberty for the same offence [sic]."); Wis. Const. art. I, § 8 ("[N]o person for the same offense may be put twice in jeopardy of punishment. . . .").

any person be twice put in jeopardy for the same offense"). *See* Proceedings of the Constitutional Convention of the Proposed State of New Mexico Held at Santa Fe, New Mexico, October 3, 1910, to November 21, 1910 at 82 (Press of the Morning Journal 1910). The Committee of the Whole Convention recommended amending the clause to add:

> and when the indictment or accusation upon which any person is put to trial and convicted contains different offenses or different degrees of the same offense, and a new trial is granted the accused, he may not again be tried for an offense or degree of the offense greater than the one of which he was first convicted.

*Id.* at 85. The Committee on Revision and Arrangement on Bill of Rights adopted the recommendation with one minor change (the word "first" was omitted) as Article II, Section 15 of the New Mexico Constitution. *See id.* at 197.

{34} In deciding to add the final clause to the double jeopardy provisions, the delegates to the Constitutional Convention significantly departed from the double jeopardy clauses formulated by the drafters of the 1850, 1872, and 1889 constitutions, as well as from the language used in the double jeopardy clauses of most other states and the Fifth Amendment to the U.S. Constitution. A review of federal jurisprudence [3] during this time period suggests that the final clause may have been written into our state Double Jeopardy Clause in response to a 1905 decision of the United States Supreme Court.

{35} In *Trono v. United States,* 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292 (1905), three defendants had been tried for first degree murder by a court in the Phillippines. At the conclusion of trial, each of the defendants had been acquitted of murder but found guilty of assault. *Id.* at 522, 26 S.Ct. 121.

The defendants appealed their convictions. *Id.* On appeal, the Supreme Court of the Phillippines set aside the judgment of the trial court and found the defendants guilty of second degree murder. *Id.* The defendants appealed their convictions to the United States Supreme Court, alleging that the appellate court's actions in reversing the trial court's judgment and finding them guilty of second-degree murder violated their protection against double jeopardy.[4] *Id.* at 528, 26 S.Ct. 121. The United States Supreme Court affirmed the Supreme Court of the Phillippines. *Id.* at 535, 26 S.Ct. 121. The Court reasoned that, by challenging their convictions, the defendants had waived their double jeopardy rights to the entire case. *See id.* at 533, 26 S.Ct. 121. In so holding, the Court expressly rejected the doctrine, adopted by a number of state courts, that a defendant who appealed his or her conviction only waived his or her double jeopardy rights as to that offense (as opposed to all offenses charged). *See id.* at 530–33, 26 S.Ct. 121.

{36} Following *Trono,* the delegates to the 1910 Constitutional Convention would likely have understood that the generalized language used in the 1889 New Mexico Constitution and written into the 1910 New Mexico Constitution, "nor shall any person be twice put in jeopardy for the same offense," would be susceptible to the same construction that the United States Supreme Court had given to substantially similar language in *Trono.* I cannot say with absolute certainty that those drafting the New Mexico Constitution added the final clause to Article II, Section 15 of the New Mexico Constitution in order to dispel any notion that the delegates approved of *Trono* and to ensure that courts would not construe the New Mexico double jeopardy clause in a similar manner. At the time of enactment, however, the final clause of Article II, Section 15 gave New Mexico residents

---

3. Notwithstanding New Mexico's movements for statehood in 1850, 1872, and 1889, New Mexico remained a federal territory subject to the federal constitution until statehood was achieved in 1912.

4. Defendants' double jeopardy rights stemmed from an act of Congress providing for the rights of a person accused of a crime in the Phillippines, which stated that "no person for the same offense shall be twice put in jeopardy of punishment." *See id.* at 528, 26 S.Ct. 121. The U.S. Supreme Court noted that the language of the act of Congress was substantially taken from the Bill of Rights set forth in the U.S. Constitution, and stated they would construe the double jeopardy question raised by the case "as if it arose in one of the Federal courts in this country." *See id.* at 528–29, 26 S.Ct. 121.

greater protection than they had previously received under the federal Constitution.

{37} In my opinion, the final clause of Article II, Section 15 expresses what later became the implied acquittal doctrine, which was adopted in *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In that case, the United States Supreme Court observed:

[Defendant] was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the ga[u]ntlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder.

*Green*, 355 U.S. at 190, 78 S.Ct. 221. In so holding, the Green Court effectively overruled *Trono*. *See Green*, 355 U.S. at 197–98, 78 S.Ct. 221 (limiting *Trono* to "its peculiar factual setting," based on traditions in Philippine courts). I think the drafters of Article II, Section 15 included the language referring to multiple charges to address the circumstances that we now describe as an implied acquittal. Thus, I believe the language is intended to apply when higher charges are brought in the first trial but the jury returns a verdict on the lesser crime or lesser degree of crime. Once that doctrine was adopted by the United States Supreme Court, Article II, Section 15 no longer provided additional constitutional protections in this particular area. At that point Article II, Section 15 became co-extensive with the protections under the federal constitution in this area. Based on that conclusion, I would hold that Article II, Section 15 does not bar Defendant's prosecution for first degree murder in this case, because Defendant was not impliedly acquitted of first degree murder.

{38} I recognize, however, that my construction of Article II, Section 15 renders the final clause essentially meaningless today, in that it is solely a restatement of the implied acquittal doctrine and provides no greater rights to defendants. As a general rule, this Court avoids such constructions. *See Denish v. Johnson*, 1996–NMSC–005, ¶ 37, 121 N.M. 280, 910 P.2d 914 ("[N]o part of a constitutional provision should be interpreted so that it is rendered meaningless or superfluous."). I do not believe I have violated that principle of construction by concluding that Article II, Section 15 diverged from the federal Constitution at the time it was ratified but is now coextensive with the federal constitution. The clause was not meaningless at the time our Constitution was ratified.

{39} We have no power "to enlarge the scope of constitutional provisions beyond their intent." *Bd. of Educ. v. Robinson*, 57 N.M. 445, 450, 259 P.2d 1028, 1032 (1953). Some scholars divide constitutional provisions into two categories. *See, generally,* Ronald Dworkin, *Freedom's Law* 73–73 (1996). Some clauses contain prohibitions that are very specific; these are couched in concrete language. *See, e.g.,* N.M. Const. art. II, § 9 ("[N]o soldier shall in time of peace be quartered in any house without the consent of the owner, nor in time of war except in the manner prescribed by law."). Other clauses contain prohibitions stated in abstract terms, such as the Due Process or Equal Protection clauses. *See* N.M. Const. art. II, § 18. While the language in the first clause of Article II, Section 15 is abstract and establishes general principles, the language at question in this case is concrete. For that reason, I do not think that we should now interpret the language of the final clause of Article II, Section 15 to include any additional protections not contemplated by the drafters.

*The Plain Language of Article II, Section 15*

{40} The majority, concluding that the protections embodied in Article II, Section 15 extend beyond the implied acquittal doctrine, has held that a defendant may not be tried for any offense or degree of offense greater than the one for which he or she was initially convicted. That conclusion is based on an interpretation of the phrase "again be tried." Moving beyond the historical analysis of Article II, Section 15, I believe our case law also supports a different interpretation of

that phrase than that adopted by the majority.

{41} Only one prior case has construed the language at issue here. *See State v. Martinez,* 120 N.M. 677, 905 P.2d 715 (1995). In that case, the defendant was charged with attempted murder and aggravated battery. *Id.* The jury was unable to reach a verdict on the attempted murder charge, but convicted the defendant of aggravated battery. *Id.* The issue on appeal was whether the State could retry the defendant for attempted murder. *Id.* at 678, 905 P.2d at 716. The defendant, relying on both Article II, Section 15 and Section 30–1–10, argued that aggravated battery is a lesser included offense of attempted murder and that the State could not retry him for attempted murder. *Id.* at 678, 905 P.2d at 716. The Court concluded that the defendant could be retried on the higher. *Id.* Because there was an affirmative showing that the jury was unable to reach a verdict on the attempted murder charge, there was no implied acquittal of that charge. *See id.* at 679–80, 905 P.2d at 717–18. The State was free to retry the defendant on the attempted murder charge. *See id.*

{42} The *Martinez* Court cited *State v. Sneed,* 78 N.M. 615, 617, 435 P.2d 768, 770 (1967), for the proposition that Section 30–1–10 "precludes retrial of a greater offense only after acquittal of that offense." The Court of Appeals suggested that the interpretation adopted in *Martinez* was incorrect because it relied on an overly broad interpretation of *Sneed.* I agree that *Sneed* merely stated the general rule that the State can retry a defendant who successfully appeals his or her conviction. *Sneed,* 78 N.M. at 617, 435 P.2d at 770. Nonetheless, while the *Martinez* Court may have overstated the holding of *Sneed,* I think it adopted the correct interpretation of Article II, Section 15 and Section 30–1–10. I think that both Article II, Section 15 and Section 30–1–10 apply only in cases where a defendant has been charged with multiple degrees of a crime, or multiple crimes, but was convicted of a lesser degree or lesser crime.

{43} If the majority's interpretation of the language were correct, then the subsequent prosecution would have been barred in *Martinez* as well. In that case, the indictment charged different offenses. After the defendant was convicted of the lesser charge, he was granted a new trial based on improperly admitted evidence. Therefore, Article II, Section 15 would have applied to the defendant in *Martinez.* Based on the majority's interpretation of the language, the defendant in that case could not have been retried on a higher charge than the one for which he was originally convicted. The *Martinez* Court, however, concluded that neither Article II, Section 15, nor its codifying statute barred retrial in that case. I believe the same is true here.

{44} Defendant argues that *Martinez* is distinguishable because the jury failed to return a verdict on the higher charge in that case. Thus, according to Defendant, *Martinez* merely applied the general rule that the state can retry a defendant after a jury fails to return a verdict. Defendant is correct in observing that when a jury is unable to reach a verdict, the second trial is a continuation of the first, and the defendant therefore is only placed in jeopardy once. *Martinez,* 120 N.M. at 678, 905 P.2d at 716. The same is true, however, when a defendant successfully overturns a conviction. Retrial after reversal on any ground other than insufficient evidence is "[a]t the opposite end of the spectrum" from an acquittal for double jeopardy purposes. *County of Los Alamos v. Tapia,* 109 N.M. 736, 743, 790 P.2d 1017, 1024 (1990). In such a case "society's interest in administering its laws completely overrides the defendant's interest in freedom from [the] hardships [of retrial]." *Id.* As the United States Supreme Court explained, when a defendant is successful on appeal, his conviction is "wholly nullified and the slate wiped clean." *North Carolina v. Pearce,* 395 U.S. 711, 721, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).[5]

---

5. The majority points to some minor differences between the language in the constitutional provision and the codifying statute. The differences may indeed have some significance, and we must presume that they do. Nonetheless, I do not think these differences have significance in *this* case.

**152**

{45} Based on this analysis of the plain language of Article II, Section 15 and Section 30–1–10, I would conclude that the State may, without violating the Double Jeopardy Clause of our state's constitution, amend the criminal information to allege a higher degree of crime against a defendant who has successfully appealed a conviction for the lesser degree of the crime. In this case, as in *Martinez,* there was no implied acquittal. Defendant thus stands in the same position he did before his first trial began. At that point, the State would have been entitled to file an amended information with new charges. In my opinion, the State can do the same thing now. Article II, Section 15 does not operate as a bar to bringing higher charges when reprosecuting a defendant who has successfully appealed a conviction.

{46} Such a conclusion does not leave a defendant with no protection in such cases. Instead, the State's charging decision is constrained by the Due Process Clause, which prohibits vindictive prosecution. *See Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *State v. Brule,* 1999–NMSC–026, ¶ 6, 127 N.M. 368, 981 P.2d 782. That doctrine prevents the State from bringing a higher charge as retribution for a defendant's successful appeal. In this case, the State claimed that its decision to bring new charges was based on new information that became available after Defendant's successful appeal. The trial court found that the State's decision was not motivated by vindictiveness. I agree with the majority that Defendant's due process claim is not before us at this time.

{47} For the reasons stated above, I dissent.

I CONCUR: PATRICIO M. SERNA, Justice.