2007-NMSC-032

164 P.3d 1

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jarrell FRAZIER, Defendant–Appellant.**

No. 29,138.

Supreme Court of New Mexico.

May 11, 2007.

Rehearing Denied June 25, 2007.

Liane E. Kerr, LLC, Liane E. Kerr, Albuquerque, NM, for Appellant.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

BOSSON, Justice.

{1} This appeal continues our historically close scrutiny of the New Mexico felony murder statute. *See State v. Contreras,* 120 N.M. 486, 903 P.2d 228 (1995); *State v. Ortega,* 112 N.M. 554, 817 P.2d 1196 (1991); *State v. Harrison,* 90 N.M. 439, 564 P.2d 1321 (1977). In *Contreras,* we held that double jeopardy principles prohibit convicting a defendant of both felony murder and the predicate felony on which the felony murder is based, at least not when the underlying conduct is unitary. 120 N.M. at 491, 903 P.2d at 233. Today we inquire, for the first time, whether the murder and the predicate felony are actually greater and lesser included offenses in every case, one subsumed within the other, which thereby precludes multiple, separate convictions according to how the legislature has defined the particular offense of felony murder. Concluding that the legislature has thus spoken, we hold that the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both. Accordingly, we reverse the conviction for the predicate offense of kidnapping. We affirm all other convictions.

## BACKGROUND

{2} In the early morning hours of April 14, 2002, Defendant Jarrell Frazier ("Frazier"), along with his co-defendant Davis Wilson ("Wilson"), brutally beat Kelly Knoll ("Knoll") in front of a truck on a residential street in the Kirtland Addition neighborhood of Albuquerque. After beating Knoll, Frazier and Wilson wiped down the truck with rags, placed Knoll in the back of the truck, and kicked him yet again. Knoll was then driven about a mile away and shot five times in the back of the truck by either Frazier or Wilson. The cause of Knoll's death was gunshot wounds to his head and chest.

{3} Officer Vigil responded to a call from a neighbor. Arriving at the scene shortly after the truck had left, Officer Vigil heard several gunshots coming from the south of his location. The next day Knoll was found dead in the back of the truck about a mile southeast from where the beating occurred.

{4} A jury convicted Frazier of kidnapping, felony murder predicated on that same kidnapping, conspiracy to commit kidnapping, aggravated battery with great bodily harm, conspiracy to commit aggravated battery with great bodily harm, two counts of tampering with evidence, and conspiracy to commit tampering with evidence. Frazier was acquitted of first-degree willful and deliberate murder and conspiracy to commit felony murder. The trial court sentenced Frazier consecutively to life imprisonment for felony murder and twelve years imprisonment for kidnapping.

{5} Frazier now appeals directly to this Court, raising two issues. *See* N.M. Const. art VI, § 2; Rule 12–102(A)(1) NMRA (direct appeal to Supreme Court from conviction of first-degree murder). First, Frazier argues that his right to be free from double jeopardy was violated when he was convicted of both felony murder and kidnapping, the very predicate felony on which the murder conviction was based. Second, Frazier claims that the trial court erred when it allowed the State to introduce certain fingerprint evidence. Because we conclude that Frazier's separate conviction of kidnapping violates the Double Jeopardy Clause of the United States Constitution, we vacate that conviction. We affirm Frazier's remaining convictions because his argument regarding

the admission of the fingerprint evidence was not properly preserved.

## NEW MEXICO CASE LAW ON FELONY MURDER

{6} Before we embark on a construction of our felony murder statute as it pertains to the double jeopardy issue, we first briefly survey New Mexico's felony murder case law.

{7} New Mexico courts have often commented on the general disfavor with which the felony murder rule is viewed. As this Court noted in *Ortega*, "[f]ew legal doctrines have been as maligned and yet have shown as great a resiliency as the felony-murder rule." 112 N.M. at 559, 817 P.2d at 1201(quoted authority omitted); *see also* Model Penal Code § 210.1 cmt. 1, at 5–6 (Official Draft and Revised Comments 1962) (explaining that the Model Penal Code abandons the felony murder doctrine as an independent basis for establishing liability for criminal homicide). Proceeding from this premise, our cases have read into the felony murder statute several limitations on its use.

{8} In *Harrison*, we held that only a first-degree felony or an inherently dangerous felony committed under inherently dangerous circumstances could support a felony murder charge. 90 N.M. at 442, 564 P.2d at 1324. Subsequently, in *Ortega*, we held that felony murder has a *mens rea* element, "which cannot be presumed simply from the commission or attempted commission of a felony." 112 N.M. at 561, 817 P.2d at 1203. Therefore, in order to convict a defendant of felony murder, the State must prove that the defendant had a culpable state of mind sufficient to support a conviction for second-degree murder; the mental state required for the underlying felony is not sufficient. *Id.* at 563, 817 P.2d at 1205. *Ortega* even went so far as to suggest that, absent a construction of the felony murder statute to include this enhanced intent, the statute might be subject to constitutional attack by establishing a presumption of *mens rea* in violation of due process. *Id.* at 562–63, 817 P.2d at 1204–05.

{9} After construing the felony murder statute to include an intent requirement, we observed in *Ortega* that the legislature had legitimately "determined that a killing in the commission or attempted commission of a felony is deserving of more serious punishment than other killings in which the killer's mental state might be similar but the circumstances of the killing are not as grave." *Id.* at 565, 817 P.2d at 1207. Our felony murder statute thus serves to elevate to first-degree murder what would otherwise be a second-degree murder based on the rationale that a killing in which the killer's mental state is consistent with second-degree murder, but which is done in the commission of a dangerous felony, deserves punishment equal to that of first-degree premeditated or depraved-mind murder. *See id.*

{10} We observe a paradox. A defendant who is convicted of and sentenced for both the felony murder and the underlying felony does not receive a punishment equal to that for first-degree premeditated murder; he actually receives a *greater* punishment. He is convicted of *both* first-degree murder and the underlying predicate felony and can be sentenced consecutively for both. Thus, if the State proves that a defendant killed with a mental state sufficient only for second-degree murder, but in the course of a dangerous felony, that defendant will receive a *greater* punishment than a defendant who is shown to have killed with a more culpable mental state such as deliberate intent murder. In the absence of any more specific elaboration by the legislature, such an outcome appears arbitrary.

{11} We question whether the legislature intended such a result when, as we will discuss shortly, (1) the legislature never expresses an intent that both convictions should stand and be sentenced consecutively, and (2) the indicia of legislative intent we discuss below demonstrates the contrary conclusion: that the predicate felony is subsumed within the conviction for felony murder. This problematic result, along with the narrow construction we have previously given to our felony murder statute, informs our analysis of double jeopardy issues in the context of felony murder.

## DOUBLE JEOPARDY

{12} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any per-

son be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* N.M. Const. art. II, § 15 (providing for double-jeopardy protection). The clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), *overruling Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

{13} Among other things, the Double Jeopardy Clause protects a defendant from twice being punished at one trial for the "same offense" (multiple punishments). *See Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *State v. Lynch,* 2003–NMSC–020, ¶ 9, 134 N.M. 139, 74 P.3d 73. Multiple punishment has two prongs. First are the "unit-of-prosecution" cases where the defendant is "charged with multiple violations of a single statute based on a single course of conduct." *Swafford v. State,* 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). Second are the "double-description" cases where "the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Id.* Frazier argues that he was improperly convicted under two separate statutes for the same offense, the felony murder statute and the kidnapping statute, and therefore we analyze this as a double-description case.

**The *Swafford* Test**

{14} *Swafford* is the leading New Mexico case on the double-description analysis. In that opinion, this Court addressed whether *Swafford's* convictions and sentence for both incest and criminal sexual penetration arising out of the same conduct constituted double jeopardy. *Id.* at 6, 810 P.2d at 1226. In holding there was no double jeopardy violation, this Court synthesized the many varied theories set forth in both New Mexico and federal decisional law to come up with a single test for multiple punishment cases. In fashioning this test, we recognized "the polestar guiding courts is the legislature's intent to authorize multiple punishments for the same offense," the central question being

whether the legislature has, in fact, authorized multiple punishments or only a single punishment for the same offense. *Id.* at 8, 810 P.2d at 1228. We thus stated a "two-part test for determining legislative intent to punish." *Id.* at 13, 810 P.2d at 1233.

{15} The first part of the test for determining legislative intent asks "whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes," which in most cases leads to a judicial inquiry into the facts and circumstances of the case to determine whether acts associated with each statute are sufficiently separated by time and space to allow for separate prosecution and conviction under each statute. *Id.* at 13–14, 810 P.2d at 1233–34. The second part of the test then "focuses on the statutes at issue to determine whether the legislature intended to create separately punishable offenses." *Id.* If there is no clear expression of legislative intent, a court must apply the rule of statutory interpretation announced by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. According to *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180.

***Contreras* and Application of the *Blockburger* Test to Felony murder Cases**

{16} This Court has already determined the outcome of the second part of the *Swafford* test as applied to felony murder cases based on unitary conduct: In *Contreras,* we held that when the conduct is unitary, the defendant cannot be convicted of both felony murder and the underlying predicate felony. 120 N.M. at 491, 903 P.2d at 233. We reached this conclusion by relying on the United States Supreme Court's analysis in *Whalen. Id.* In *Whalen,* the Supreme Court applied the *Blockburger* test to find that Congress did not authorize consecutive sentences for felony murder and the underlying

felony. 445 U.S. at 684, 100 S.Ct. 1432. In so holding, the Supreme Court reasoned that, under the federal statute, a defendant could not be convicted for a killing in the course of a rape without the prosecution proving all the elements of the predicate offense of rape, and therefore "Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape." *Id.* at 694 n. 8, 100 S.Ct. 1432. This Court observed in *Contreras* that there was no significant difference between our felony murder statute and the federal felony murder statute in *Whalen*, and therefore "[a]pplication of a different rationale [was] unwarranted by anything unique to our statutes." *Contreras,* 120 N.M. at 491, 903 P.2d at 233.

{17} Because *Contreras* controls the outcome of the second part of *Swafford's* legislative intent inquiry as applied to felony murder cases, the present case turns entirely on the unitary conduct prong of *Swafford.* Specifically, we ask whether our felony murder statute expresses a clear legislative intent that a killing during the commission of a felony constitutes unitary conduct in every case, thereby precluding a unitary conduct inquiry by this Court into the specific facts of the case.

### Unitary Conduct under *Swafford*

{18} Legislative intent is the touchstone of the double-description analysis. Cases following *Swafford,* and even *Swafford* itself in its application of the test, have construed the two parts of the *Swafford* test as separate, one part inquiring into the facts of the case and the other part into legislative intent. *See Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34 (stating that if the conduct is found to be non-unitary, "inquiry is at an end"); *Contreras,* 120 N.M. at 489, 903 P.2d at 231 (stating that "it is only 'if it reasonably can be said that the conduct is unitary ... [that] one must move to the second part of the inquiry'" (quoting *Swafford,* 112 N.M. at 14, 810 P.2d at 1234)). However, *Swafford's* initial articulation of the test speaks in terms of both prongs being used to determine legislative intent. 112 N.M. at 13, 810 P.2d at 1233 (stating that the two-part test is used for the purpose of "determining legislative intent to

punish"). We think this articulation is telling.

{19} Regardless of which part we analyze, the *Swafford* test never veers materially from the underlying "polestar" of legislative intent. Viewed as a tool for discerning legislative intent to punish, the unitary conduct prong of *Swafford* functions as a proxy for legislative intent when the legislature is silent. In other words, if criminal acts are sufficiently separate in time and space, we have assumed that the legislature intended to authorize separate punishments under different statutes for each distinct act, unless the statutes indicate that the conduct should be construed as part of a single transaction. *See, e.g., id.* (unitary conduct part of *Swafford* test "arises from the pragmatic observation that the double jeopardy clause clearly cannot operate to prohibit prosecution, conviction, and punishment in a single trial for discrete acts violative of the same statute (whether actually the same or the same under [the *Blockburger* test] )"); *see also Vick v. State,* 991 S.W.2d 830, 833 (Tex.Crim.App. 1999) (holding that double jeopardy was not violated by multiple convictions for separate acts of sexual assault because "the Legislature, through the language of the statute, has rejected grouping aggravated sexual assaults by 'transaction' ").

{20} The corollary of this principle dictates that when the legislature is not silent and speaks of the conduct as elements of a single criminal episode, even if temporally separate, then our job is to enable legislative intent. When the relevant statutes define the offenses as greater and lesser included, and the jury instructions require the jury to make the factual finding of unitary conduct, then legislative intent with regard to the first prong of the *Swafford* test is clear. In that case, it would be presumptuous for this Court to conduct our own inquiry into the factual particularities of each case. *See Brown v. Ohio,* 432 U.S. 161, 169–70, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (because Ohio statutes on auto theft and joyriding defined the theft and operation of a single car as a single offense, defendant could not be convicted of both crimes even though the con-

duct supporting each took place at different times and in different places).

## Unitary Conduct Under New Mexico's Felony murder Statute

{21} Keeping in mind that legislative intent is our primary concern in deciding multiple punishment cases, we look first to the language of the statutes at issue. *See Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (stating that in the multiple punishment context, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended"). To no surprise, the kidnapping statute is silent on the question of whether the legislature intended the conduct supporting kidnapping to be construed as unitary with the conduct supporting a felony murder offense. We would not expect any reference to murder in a kidnapping statute. However, the felony murder statute reveals a clear answer.

{22} New Mexico's felony murder statute provides that "[m]urder in the first degree is the killing of one human being by another without lawful justification or excuse ... *in the commission of or attempt to commit* any felony." NMSA 1978 § 30–2–1(A) (1994) (emphasis added). Our jury instructions based on this statute require that, to find a defendant guilty of felony murder, the jury must find that the defendant committed or attempted to commit the underlying felony and that the defendant caused the death of the victim "*during the commission* of" or "the attempt to commit" the underlying felony. Rule 14–202 NMRA (emphasis added) (brackets omitted). Indeed, in this case, the jury was instructed that, in order to find Frazier guilty of felony murder, it had to find that he "committed the crime of kidnapping under circumstances or in a manner dangerous to human life," and that he "caused the death of [Knoll] *during the commission of kidnapping.*" (Emphasis added.)

{23} The language of both the statute and our jury instruction renders the conduct supporting the felony murder and the underlying predicate felony unitary by definition; it expressly requires that the killing happen "in the commission of" the underlying felony.

The jury instructions based on the statute require that, for a jury to convict a defendant of felony murder, the conduct upon which both the underlying felony and the felony murder is based must necessarily be unitary. Thus, when a jury finds a defendant guilty of felony murder, it has already determined the fact-based unitary conduct question—it has found that the killing happened *during* the commission of the underlying felony. We are simply unable to discern any principled distinction between *Swafford's* notion of "unitary conduct" and the requirement that the killing happen "in the commission of" or "during the commission of" the underlying felony. 112 N.M. at 13, 810 P.2d at 1233; *see Brown,* 432 U.S. at 169, 97 S.Ct. 2221 ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."). *See generally* George C. Thomas III, *A Unified Theory of Multiple Punishment,* 47 U. Pitt. L.Rev. 1, 12–25 (1985) (discussing the multiple punishment analysis and stating that "the unitary conduct issue depends entirely on what the legislature intended to be the unit of conviction, rather than on a space-time analysis of the defendant's physical actions").

{24} Our holding is not inconsistent with *Swafford,* which refers to both parts of its multiple punishment test in terms of legislative intent. The particular facts of *Swafford* also lend support. *Swafford* itself did not undertake a unitary conduct analysis with regard to the defendant's convictions of incest and criminal sexual penetration, finding simply that the first part of the test was satisfied because there was no dispute that the same conduct precipitated both offenses. 112 N.M. at 15, 810 P.2d at 1235. However, in *Swafford,* just as in this case, because of the way the statutes defined the offenses of criminal sexual penetration and incest, there was no way for the conduct *not* to be unitary; the conduct required to commit criminal sexual penetration when committed under the familial circumstances present in *Swafford* will always support a parallel charge of incest. Similarly, the conduct required to commit felony murder will always support a par-

allel charge with respect to the underlying felony. Though *Swafford* reached its conclusion that the conduct was unitary by finding no dispute on the issue, the same conclusion necessarily follows by looking at the statutes themselves. *See* NMSA 1978, § 30-9-11 (2003) (criminal sexual penetration); NMSA 1978, § 30-10-3 (1963) (incest).

{25} Our opinion in *Contreras*, but for its cursory analysis of unitary conduct, also prefigures our decision here. Implicit in our holding, that the elements of the underlying felony were subsumed by the elements of felony murder, was the notion that a factual inquiry into unitary conduct was not necessary to the determination of legislative intent. When the felony murder statute is interpreted such that the underlying felony is a lesser-included offense of felony murder, it follows that the legislature intended the conduct supporting both offenses to be considered "unitary" for double jeopardy purposes. *See Whalen*, 445 U.S. at 692, 100 S.Ct. 1432 (stating that, absent a clear indication of legislative intent to the contrary, two statutory provisions that proscribe the "same offense" are construed not to authorize cumulative punishments).

■ {26} The requirement under the felony murder statute, that the conduct be unitary to convict a defendant of felony murder, is also consistent with our earlier discussion of the legislative purpose behind felony murder. When the State is permitted to elevate what would otherwise be a second-degree murder to first-degree murder, with the attendant increase in punishment, based on the fact that the killing happened during the commission of a felony, the felony should be subsumed by the first-degree murder. The underlying felony has already served to enhance the murder to first degree without requiring proof of premeditation or a depraved mind. *See Ortega,* 112 N.M. at 563, 817 P.2d at 1205 (explaining that "[s]econd degree murder ... may be elevated to first degree murder *when it occurs in circumstances* that the legislature has determined are so serious as to merit increased punishment" (emphasis added)). To allow a separate conviction for the predicate felony would create the paradoxical result we noted

above—the defendant would receive a greater punishment than if he had killed with a more culpable mental state. Nothing in the statute indicates that the legislature intended this arbitrary result. *See Swafford,* 112 N.M. at 15, 810 P.2d at 1235 (stating that "[t]he quantum of punishment ... is probative of legislative intent;" thus, "[w]here one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes").

■ {27} Of course, if the facts support multiple charges of a particular felony which can be sustained under a unit-of-prosecution analysis, then the State is free to use one of those charges as the predicate felony and obtain separate convictions for the other charges. Our recent opinion in *State v. Bernal*, 2006-NMSC-050, 140 N.M. 644, 146 P.3d 289, is illustrative. Bernal broke into Giron's home, intending to rob him of some drug money. *Id.* ¶ 2. Upon entering Giron's bedroom, Bernal immediately shot Giron and then turned his gun on Giron's girlfriend, Romero, demanding that she find the money. *Id.* ¶¶ 2-3. Romero could not find the money and Bernal then left the house. *Id.* ¶ 3. A jury found Bernal guilty of felony murder, two counts of armed robbery, and other offenses. *Id.* ¶ 5. The trial court dismissed Bernal's conviction for the attempted armed robbery of Giron because that count represented the predicate felony for the felony murder conviction, but the court did allow the separate conviction for attempted robbery of Romero to stand. *Id.*

{28} This Court upheld Bernal's conviction for the attempted armed robbery of Romero, finding that the conduct supporting that charge was not unitary with the felony murder of Giron. *Id.* ¶ 11. However, the true point on which our holding in *Bernal* turns is the outcome of a unit-of-prosecution analysis with regard to the attempted robbery charges. *See id.* ¶¶ 12-13. We held that the convictions for two counts of armed robbery did not violate double jeopardy, despite the fact that Bernal only had the intent to steal one victim's property. *Id.* ¶ 31. We reached this determination by applying the test artic-

ulated by this Court in *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991). *See Bernal*, 2006–NMSC–050, ¶ 15, 140 N.M. 644, 146 P.3d 289.

{29} *Herron* was a unit-of-prosecution case in which we set forth a test to discern when a defendant's acts were sufficiently distinct to permit multiple punishments under the same statute. A court applying the *Herron* test evaluates the following "indicia of distinctness": (1) temporal proximity of the acts; (2) location of the victim during each act; (3) existence of an intervening event; (4) sequencing of the acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims. 111 N.M. at 361, 805 P.2d at 628. We applied the *Herron* criteria in *Bernal* to find that Bernal's acts were sufficiently distinct to justify multiple punishments under the same statute. *Bernal*, 2006–NMSC–050, ¶¶ 20–21, 140 N.M. 644, 146 P.3d 289. Thus, the attempted armed robbery of Romero did not serve as the predicate felony for the felony murder of Giron, and Bernal could be convicted of both the felony murder and the attempted armed robbery of Romero, but not the attempted armed robbery of Giron.

{30} *Bernal* demonstrates that if the State charges a defendant with multiple first-degree felonies under a single statute, and multiple convictions under that statute can be sustained based on a unit-of-prosecution analysis, then only one such conviction needs to serve as the predicate felony for a felony murder conviction and the other convictions may stand. However, where there is only one first-degree felony conviction which also serves as the predicate felony for a felony murder conviction, we hold that the legislature did not intend to allow a separate conviction for that same felony.

**Clarification of Double Jeopardy Issue in Felony murder Precedent**

{31} We recognize that our holding represents a departure from certain cases included with our felony murder jurisprudence in which we have examined whether conduct is factually unitary, in some cases finding that it is not and allowing both convictions to stand. *See, e.g., State v. Foster*, 1999–

NMSC–007, ¶ 35, 126 N.M. 646, 974 P.2d 140 (convictions for aggravated kidnapping and felony murder were based on non-unitary conduct and double jeopardy was not violated); *State v. Mora*, 1997–NMSC–060, ¶ 69, 124 N.M. 346, 950 P.2d 789 (convictions for criminal sexual contact and felony murder were based on non-unitary conduct and double jeopardy was not violated); *Contreras*, 120 N.M. at 490–91, 903 P.2d at 232–33 (convictions for armed robbery and felony murder were based on unitary conduct and armed robbery conviction was vacated); *State v. Kersey*, 120 N.M. 517, 523, 903 P.2d 828, 834 (1995) (convictions for kidnapping and felony murder were based on non-unitary conduct and thus double jeopardy was not violated by separate convictions); *Ortega*, 112 N.M. at 571, 817 P.2d at 1213 (same). However, none of these cases addresses the specific issue before us here: whether the felony murder statute expresses a clear legislative intent by requiring the jury to make the finding of unitary conduct before convicting a defendant of felony murder.

{32} Our previous cases applied the unitary conduct prong of the *Swafford* test to felony murder situations and were not asked to inquire into whether the particular language of the felony murder statute might be indicative of legislative intent on the issue of unitary conduct. Some of those cases analyzed the statutes defining the predicate felony, asking whether the felony was defined in such a way that it supported a jury finding of non-unitary conduct. *See, e.g., Foster*, 1999–NMSC–007, ¶¶ 29–40, 126 N.M. 646, 974 P.2d 140; *Kersey*, 120 N.M. at 517, 903 P.2d at 828.

{33} In *Foster*, we looked to the statute and jury instructions on armed robbery to determine whether they provided the jury with alternative bases for a conviction, some supporting unitary conduct and some supporting non-unitary conduct. 1997–NMSC–007, ¶¶ 36–37, 122 N.M. 766, 931 P.2d 1382. In that case, we held that based on the statute and the instructions on armed robbery as applied to the facts, the jury could have based its conviction on conduct that was either unitary or non-unitary. *Id.* ¶¶ 36–40. We reasoned that if the jury had based its

finding on unitary conduct, *Contreras* would apply and the elements of armed robbery would be subsumed within the elements of felony murder, thus violating double jeopardy if the defendant were convicted of both. *Id.* ¶¶ 39–40. Because the verdict did not indicate which alternative the jury relied on and if one of the alternatives would have violated double jeopardy, we held that the defendant's conviction of armed robbery could not stand. *Id.* ¶ 40.

{34} However, we also analyzed the kidnapping statute in *Foster* to find that the conduct supporting the defendant's conviction of aggravated kidnapping could not have been based on conduct that was unitary with the felony murder, and thus, the aggravated kidnapping conviction did not violate double jeopardy. *Id.* ¶¶ 29–35. We conducted a similar review of the kidnapping statute in *Kersey*, reaching the same factual conclusion as that reached in *Foster* with regard to the kidnapping conviction. *See Kersey*, 120 N.M. at 523, 903 P.2d at 834 (analyzing "hold to service" requirement in kidnapping statute and holding that double jeopardy was not violated because conduct required to establish kidnapping was completed two hours before the conduct required to establish felony murder).

{35} *Foster* and *Kersey* were correct in their analyses of the predicate felony statutes with respect to legislative intent on the issue of unitary conduct. However, those cases did not ask the question we ask here, which shifts the focus from the predicate felony statutes to the felony murder statute itself. That statute requires the killing to happen *in the commission of* a felony and the accompanying jury instructions require the jury to find that the killing happened *during the commission* of the predicate felony. Therefore, the question we now ask is whether the jury, when so instructed, could have found that the killing was separate from the underlying felony. We do not believe the jury could so find and the language of the statute does not indicate that the legislature intended otherwise. *See Whalen*, 445 U.S. at 691–92, 100 S.Ct. 1432 (when one statute is subsumed within the other, we presume that the legislature did not intend multiple punish-

ments unless there is "a clear indication of contrary legislative intent"). We now clarify our precedent according to the legislative intent expressed in the felony murder statute.

## FINGERPRINT EVIDENCE

■ {36} At trial, Frazier's girlfriend testified to what Frazier had told her: that he had borrowed a truck from Knoll, that he still had time left on it when Knoll returned to pick it up, that he had beaten Knoll, and that he knew the police were looking for him. A detective in the criminalistics unit of the Albuquerque Police Department ("APD") testified that latent fingerprints were lifted off of the door frames of the truck. Another APD detective, Detective Herrera, testified that she matched five of these latent prints to a "ten-print" fingerprint card of Frazier's that was kept by APD in the ordinary course of business.

{37} Frazier now asserts that the fingerprint evidence and the ten-print card were inadmissible hearsay. The overall thrust of Frazier's argument appears to be that Detective Herrera should not have been allowed to identify the prints on the ten-print fingerprint card as Frazier's because that could not fall within the business records exception to the hearsay rule. *See* Rule 11–803(F) NMRA. Frazier claims that his counsel properly objected to the evidence but that the trial court overruled the objection. The State points out that Frazier is relying upon objections made by his co-defendant's counsel and that Frazier's counsel did not object to the admission of the evidence. In fact, after Detective Herrera testified that she compared the latent prints to a ten-print card bearing Frazier's name and birth date, that the ten-print card was kept in the normal course of business, and that she relied on such records to make professional judgments, Frazier's counsel affirmatively stated that there was no objection to the admission of Frazier's ten-print card. In his reply, Frazier argues that he should be able to rely on the objections made by his co-defendant's counsel since he had previously objected to a joint trial but was denied a severance. Frazier then cites to the record where he claims to have objected, although all of the citations

are to objections made by his co-defendant's counsel.

{38} "Acquiescence in the admission of evidence ... constitutes waiver of the issue on appeal." *State v. Campos*, 1996–NMSC–043, ¶ 47, 122 N.M. 148, 921 P.2d 1266. Frazier did not preserve any objection to the admission of the fingerprint evidence as he did not object or join in his co-defendant's objections. *See State v. Pettigrew*, 116 N.M. 135, 143, 860 P.2d 777, 785 (Ct.App. 1993) (concluding that the defendant "was satisfied with the trial court's handling of the matter" when he did not object or join in his co-defendants' objections); *State v. Pacheco*, 110 N.M. 599, 604, 798 P.2d 200, 205 (Ct.App. 1990) (rejecting the defendant's failure to sever claim where the defendant did not object but, instead, relied on his co-defendant's objection). Moreover, not only did Frazier acquiesce in the admission of the evidence, Frazier's counsel affirmatively stated that there was no objection to the admission of Frazier's ten-print card. Even if Frazier did at some point raise an objection before Detective Herrera testified, "[a] party cannot rely on a withdrawn objection to preserve error." *State v. Duncan*, 117 N.M. 407, 413, 872 P.2d 380, 386 (Ct.App.1994), *abrogated on other grounds by State v. Brule*, 1999–NMSC–026, ¶¶ 3–6, 127 N.M. 368, 981 P.2d 782.

{39} Finally, Frazier argues that he should be able to rely on co-defendant's objections because the State "elected to join the two defendants" and because his motion to sever was denied. This argument has no merit. Frazier points to no authority, and we see no beneficial policy advanced by adopting his logic. Therefore, any objection to the admissibility of the fingerprint evidence was not properly preserved and we will not consider it on appeal.

**CONCLUSION**

{40} We vacate Frazier's kidnapping conviction as violative of double jeopardy. Frazier's remaining convictions are affirmed. We remand to the district court for further proceedings consistent with this opinion.

{41} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, Justices, and EDWARD L. CHÁVEZ, Chief Justice (specially concurring).

CHÁVEZ, Chief Justice (specially concurring).

{42} I fully concur in the discussion pertaining to the fingerprint evidence. I also concur in vacating Frazier's conviction of kidnapping on grounds of double jeopardy. I write separately, however, because, while I believe this case is a step in the right direction, I am convinced that more is required to bring our double-jeopardy jurisprudence in line with the United States Constitution. After taking a fresh look at the issue, I am persuaded that our "unitary-conduct" analysis is in conflict with United States Supreme Court precedent and, thus, beginning with *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), must be modified. I write separately to explain why and how I believe our double-jeopardy jurisprudence must be modified.

{43} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* N.M. Const. art. II, § 15 (providing for double-jeopardy protection). The clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), *overruling Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The Double Jeopardy Clause has two main components. First, it protects a defendant from being retried for the "same offense" either after acquittal or conviction (subsequent prosecutions). Second, it protects a defendant from twice being punished at one trial for the "same offense" (multiple punishments). *See Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *State v. Lynch*, 2003–NMSC–020, ¶ 9, 134 N.M. 139, 74 P.3d 73. This case concerns the multiple punishment component, which itself has two prongs. First are the "unit-of-prosecution" cases where the defendant is "charged with multiple violations of a

single statute." *Swafford,* 112 N.M. at 8, 810 P.2d at 1228. Second are the "double-description" cases where "the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Id.* Since Frazier argues that double jeopardy was violated when he was sentenced according to the separate statutes of felony murder and the underlying felony on which the felony murder was predicated, this is a double-description case.

## A. United States Supreme Court Precedent

{44} Because the issue is one of a defendant's federal constitutional rights, I would begin the analysis by looking at precedent from the United States Supreme Court since the Supremacy Clause of the United States Constitution requires us to do so. *See* U.S. Const. art VI, cl. 2; N.M. Const. art. II, § 1. When dealing with a multiple-punishment issue, the Supreme Court has made it clear that the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *see also Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). Thus, under Supreme Court precedent, the first step in a court's analysis is to determine whether two convictions at a single trial were for the "same offense." If so, the second step is to determine whether multiple punishments for those same offenses were authorized by the Legislature.[1]

## 1. Determining Whether the Two Convictions Were for the Same Offense

{45} In determining whether two charged offenses are the same "for purposes of the

Double Jeopardy Clause, [a court] looks to whether the *offenses* are the same, not the interests that the offenses violate." *United States v. Dixon,* 509 U.S. 688, 699, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), *overruling Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In making this determination, the Supreme Court has consistently used the test formulated by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See, e.g., Brown,* 432 U.S. at 166, 97 S.Ct. 2221 (stating that "[t]he established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger* "). In fact, the *Blockburger* test, otherwise known as the "same-elements" test, *see Dixon,* 509 U.S. at 696, 113 S.Ct. 2849, is the *only* test used to determine whether two offenses are the same for purposes of double jeopardy. *See id.* at 704, 113 S.Ct. 2849 (overruling *Grady's* "same-conduct" test and noting that the *Blockburger* test "has deep historical roots and has been accepted in numerous precedents of [the Supreme] Court"); *see also United States v. Hatchett,* 245 F.3d 625, 631 (7th Cir.2001) ("*Dixon* reestablished the 'same-elements' test articulated by *Blockburger* as the one and only test that courts are to apply....").

{46} According to *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. Thus, there are two prongs to *Blockburger.* Under *Blockburger,* a court must determine: (1) whether each charged offense "requires proof of a fact which the other does not"; and (2) whether each charged offense was part of the "same act or transaction."

{47} *Brown* is instructive on both of these points.[2] In *Brown,* the defendant stole a car

---

1. In some cases, a court may also start (and end with) a determination of legislative intent to punish. *See Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673 (concluding that when a legislature specifically authorizes multiple punishments for two

statutes, regardless of whether the statutes proscribe the "same offense," dual convictions may be had and analysis is at an end).

2. Although *Brown* is a case that dealt with whether double jeopardy was violated by succes-

in East Cleveland, Ohio. Nine days later, the defendant was caught driving the car in Wickliffe, Ohio. In Wickliffe, the defendant was charged with the offense of joyriding—"taking or operating the car without the owner's consent." 432 U.S. at 162, 97 S.Ct. 2221. The defendant pled guilty to the charge, paid a $100 fine, and spent thirty days in jail. About a month after being released from jail, the defendant was charged in East Cleveland with auto theft. *Id.* at 162–63, 97 S.Ct. 2221. Contingent on his argument that he could not be prosecuted for auto theft on grounds of double jeopardy, the defendant pled guilty. *Id.* at 163, 97 S.Ct. 2221. On appeal, the Ohio Court of Appeals held that joyriding was a lesser-included offense of auto theft because the only element needed to prove auto theft not needed to prove joyriding was an intent to permanently deprive the owner of the automobile. *Id.* at 163–64, 97 S.Ct. 2221. Nonetheless, the defendant's conviction of auto theft was upheld on appeal because the court determined that the conduct underlying each conviction was not part of the "same act or transaction." According to the Ohio court:

> The two prosecutions [were] based on two separate acts of the appellant, one which occurred on November 29th and one which occurred on December 8th. Since appellant ha[d] not shown that both prosecutions [were] based on the same act or transaction, the second prosecution [was] not barred by the double jeopardy clause.

*Id.* at 164, 97 S.Ct. 2221 (quotation marks omitted).

{48} Applying the first prong of *Blockburger,* the Supreme Court in *Brown* agreed with the Ohio Court of Appeals and held that a greater offense and a lesser-included offense are generally the same for purposes of double jeopardy: "As is invariably true of a greater and lesser included offense, the lesser offense ... requires no proof beyond that which is required for conviction of the greater.... The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Id.* at 168, 97 S.Ct. 2221.

{49} Regarding the "same act or transaction" prong of *Blockburger,* however, the Supreme Court disagreed with the Ohio court. Notwithstanding the nine days separating the conduct underlying the two charges, the Supreme Court held that the two offenses were part of the "same act or transaction." *Id.* at 169–70, 97 S.Ct. 2221. It did so because "[t]he applicable Ohio statutes, as written and as construed in th[e] case, ma[de] the theft and operation of a single car a single offense." *Id.* at 169, 97 S.Ct. 2221. Critically, the Supreme Court stated: "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime *into a series of temporal or spatial units." Id.* (emphasis added); *see also id.* at 169 n. 8, 97 S.Ct. 2221 (noting that it "would have [been] a different case if the Ohio Legislature had provided that joyriding [was] a separate offense for each day in which a motor vehicle is operated without the owner's consent"). Soon afterwards in another case, the Supreme Court quoted *Brown* and further clarified this principle.

> "The Double Jeopardy Clause is not such a fragile guarantee that ... its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units," *or, as we hold today, into "discrete bases of liability"* not defined as such by the legislature.

*Sanabria v. United States* 437 U.S. 54, 72, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (alteration in original) (emphasis added) (citation omitted).

---

sive prosecutions—not whether double jeopardy was violated by multiple punishments—it is clear that the determination of whether two charges are the "same offense" is identical in both contexts. In *Dixon,* the Supreme Court stated:

> We have often noted that the Clause serves the function of preventing both successive punishment and successive prosecution, but there is *no* authority ... for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term "same offence" ... has two different meanings....

509 U.S. at 704 113 S.Ct. 2849 (citation omitted). *See also Brown,* 432 U.S. at 166, 97 S.Ct. 2221 ("If two offenses are the same ... for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions."). Moreover, *Blockburger* itself was a multiple-punishment case. *See Blockburger,* 284 U.S. at 300–01, 52 S.Ct. 180.

{50} Under the analysis in *Brown*, a lesser-included offense is the "same offense" as the greater offense so long as both occurred as part of the "same act or transaction." Importantly, *Brown* and *Sanabria* mandate that in determining whether two charges are part of the "same act or transaction," courts are to look solely at what the governing statutes provide—*not* simply to the temporal or spatial distance between the events or conduct underlying the charges.[3]

## 2. Determining Legislative Intent to Punish

{51} Even if two charges are the "same offense" under the Double Jeopardy Clause, a defendant is not protected against multiple punishments for those charges if the legislature has specifically authorized such punishment. In determining legislative intent in this context, the *Blockburger* test—the same test used for determining whether two offenses are the "same"—is the starting point. *See Albernaz*, 450 U.S. at 344 n. 3, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The outcome of the *Blockburger* test provides a presumptive lens through which to view any statutory language.

{52} Supreme Court precedent makes clear that if one of the two charges is determined to be a lesser-included offense of the other and if both were part of the "same act or transaction," multiple punishments are unconstitutional unless the legislature has *clearly* provided for them. *See Whalen*, 445 U.S. at 692, 100 S.Ct. 1432 ("[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent."). If the offenses are the same for purposes of double jeopardy and the legislative intent regarding multiple punishments is ambiguous in such situations, the rule of lenity is to be used. *See id.* at 695 n. 10, 100 S.Ct. 1432.

{53} On the other hand, when two charges are not the "same offense," multiple punishments are presumed permissible unless contrary to legislative intent. *Hunter*, 459 U.S. at 367, 103 S.Ct. 673; *see Albernaz*, 450 U.S. at 340, 101 S.Ct. 1137. Likewise, when the *Blockburger* test reveals that the charges are not the same for purposes of double jeopardy, the rule of lenity in construing ambiguous statutes serves no purpose. This is because it is presumed that the legislature was attempting to eradicate separate evils with the different statutes. *See Albernaz*, 450 U.S. at 342–43, 101 S.Ct. 1137.

{54} Most instructive are *Whalen* and *Hunter*. In *Whalen*, the defendant was convicted of rape and felony murder predicated on rape. Similar to the instant case, the defendant argued that imposition of multiple punishments violated the United States Constitution. 445 U.S. at 685–86, 100 S.Ct. 1432. The Supreme Court first determined that rape was a lesser-included offense of felony murder because "rape [was] a necessary element of proof of the felony murder." *Id.* at 694, 100 S.Ct. 1432. Next, the Supreme Court reversed the defendant's rape conviction because Congress was, at best, ambiguous as to whether it intended multiple punishments for felony murder and its predicates. *See id.* at 695, 100 S.Ct. 1432.

{55} In contrast is *Hunter*. In that case, the defendant complained of his multiple convictions of armed criminal action and the lesser-included offense of robbery in the first degree. *See Hunter*, 459 U.S. at 361–62, 103 S.Ct. 673. The statute proscribing armed criminal action, however, provided that any punishment for that crime was to "be in addition to any punishment provided by law for the [lesser-included offense]." *Id.* at 362, 103 S.Ct. 673. The Supreme Court upheld both convictions because the legislature's intent in providing for multiple punishments was "crystal clear." *Id.* at 368, 103 S.Ct. 673.

## B. Application of United States Supreme Court Precedent

{56} Applying the Supreme Court's precedent to the instant case, I believe an inquiry

---

**3.** Of course if the defendant was charged with multiple violations of the same *statute,* a unit-of-prosecution case, then the only question to be answered in determining whether two charges are the "same offense" is whether the defendant's conduct underlying each charge was part of the "same act or transaction" as defined by the legislature.

must first be made into whether Frazier's charge of kidnapping is the "same offense" as his charge of felony murder. This requires the answering of two questions: (1) whether kidnapping is a lesser-included offense of felony murder in this case; and if so, (2) whether the kidnapping charge and the felony-murder charge stem from the "same act or transaction?" If the answer to either of these questions is "no," the charges of kidnapping and felony murder are not the same for purposes of double jeopardy and the presumption is that the Legislature intended multiple punishments. Conversely, if the answer to both questions is "yes," then the two charges are the "same offense" and an additional inquiry into whether the Legislature intended multiple punishments is required.

{57} Frazier's kidnapping charge is a lesser-included offense of his felony-murder charge. In *Whalen*, the government argued that rape was not a lesser-included offense of the defendant's felony-murder charge because the felony-murder statute "proscribe[d] the killing of another person in the course of committing rape *or* robbery *or* kidnaping *or* arson, etc." 445 U.S. at 694, 100 S.Ct. 1432. The Supreme Court rejected this argument, stating: "A conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." *Id.* at 693–94, 100 S.Ct. 1432. We recognized in *State v. Contreras* that, after *Whalen*, there is no doubt that the predicate felony of a felony-murder charge is a lesser-included offense of felony murder. 120 N.M. 486, 491, 903 P.2d 228, 233 (1995), *overruling State v. Stephens*, 93 N.M. 458, 463, 601 P.2d 428, 433 (1979). In the instant case, as pointed out by Justice Bosson, in order to be convicted of felony murder the jury had to find that Frazier "caused the death of Kelly Knoll during the commission of kidnapping." Maj. Op. ¶ 22. Similar to *Whalen*, Frazier could not have been convicted of felony murder without all of the elements of kidnapping having first been proved. Since kidnapping is subsumed by the felony-murder charge in this case, Frazier's kidnapping charge is a lesser-included offense of his felony-murder charge.

{58} The next inquiry is whether the kidnapping and the subsequent killing of Knoll were part of the "same act or transaction." The answer to this inquiry depends on whether "[t]he applicable ... statutes, as written and as construed in this case, make [kidnapping and felony murder] a single offense." *See Brown*, 432 U.S. at 169, 97 S.Ct. 2221. My reading of United States Supreme Court precedent is that we must look *only* to the statutes; we must not use "the simple expedient of dividing [the] crime into a series of temporal or spatial units." *See id.* I recognize that, when it comes to felony murder, the majority and I agree. *See* Maj. Op. ¶ 17 ("[W]e ask whether our felony-murder statute expresses a clear legislative intent that a killing during the commission of a felony constitutes unitary conduct in every case, thereby precluding a unitary conduct inquiry by this Court into the specific facts of the case."). I applaud this departure from our previous cases, which have mostly conducted a spatial and temporal analysis of the defendant's underlying conduct. *See, e.g., State v. Mora*, 1997–NMSC–060, ¶¶ 68–71, 124 N.M. 346, 950 P.2d 789; *State v. Livernois*, 1997–NMSC–019, ¶¶ 20–22, 123 N.M. 128, 934 P.2d 1057. Where I differ with the majority, however, is its conclusion that a unitary-conduct analysis based on *Swafford* is to be used as a proxy when the statutes do not clearly provide that they are to be construed as part of the same transaction. *See* Maj. Op. ¶ 19. As I discuss further below, I believe that we must *always* consider the statutes at hand and the intent behind them when determining whether the Legislature intended two charged offenses to be part of the "same act or transaction." Doing otherwise would be resorting to the "simple expedient" that the Supreme Court in *Brown* warned against.

{59} Applying *Brown*, I conclude that Frazier's kidnapping charge stems from the "same act or transaction" as his felony-murder charge. Our Legislature has provided that to be guilty of felony murder, the murder must occur "in the commission of or attempt to commit any felony." NMSA 1978, § 30–2–1(A)(2) (1994). In fashioning this crime, it is clear from the plain language that the Legislature did not intend to temporally

or spatially divide the underlying felony from the killing. That is, the statute requires that the killing occur "*in* the commission of" the felony. Since the Legislature fashioned the felony murder statute such that the murder must occur during the commission of the predicate felony, the predicate felony is part of the "same act or transaction" as the murder.

{60} Similar to *Brown*, a different case would be presented had the Legislature provided that felony murder was a separate offense from its predicate when there was a temporal or spatial gap between the completion of the underlying felony and the subsequent murder. Because it did not, and because we are bound to follow Supreme Court precedent, I conclude that Knolls's kidnapping and murder occurred as part of the "same act or transaction." Thus, because the answer to both prongs of the "same offense" question is "yes," I conclude that Frazier's kidnapping and felony-murder charges are the "same offense" within the meaning of the Double Jeopardy Clause of the Fifth Amendment.

{61} Having concluded that kidnapping and felony murder in this case are the "same offense," I believe the next course of action is to determine whether multiple punishments are legislatively authorized. Since kidnapping is a lesser-included offense of felony murder predicated on kidnapping, there is a presumption that our Legislature did not intend multiple punishments. *See Whalen,* 445 U.S. at 691–92, 100 S.Ct. 1432. In looking at the statutory language, Frazier should not receive multiple punishments unless there is "a clear indication of contrary legislative intent." *Id.* Any ambiguity should be construed in favor of Frazier. *See id.* at 695 n. 10, 100 S.Ct. 1432.

{62} The legislation at issue is silent on whether the Legislature intended multiple punishments. Under New Mexico law, felony murder is murder in the first degree—a capital felony. NMSA 1978, § 30–2–1(A). A defendant guilty of a capital felony "shall be punished by life imprisonment or death." *Id.* § 31–18–14(A) (1993). Whoever commits kidnapping who does not voluntarily free the victim in a safe place is guilty of a

first-degree felony. *Id.* § 30–4–1 (2003). The basic sentence for a first-degree felony is eighteen years of imprisonment. *Id.* § 31–18–15(A)(2) (2005). Nowhere in the statutory provisions defining these crimes or providing for their punishment does the Legislature specifically authorize multiple punishments. Had it wanted to, the Legislature could have spoken clearly on this point. *See Hunter,* 459 U.S. at 362, 103 S.Ct. 673 (discussing a statute that provided for the punishment of armed criminal action to "be in addition to any punishment provided by law for the [lesser-included offense]"); *Jackson v. State,* 1996–NMSC–054, ¶ 2 n. 1, 122 N.M. 433, 925 P.2d 1195 (discussing legislation providing for multiple punishments for felony murder and the underlying felony, but that never reached the senate floor). Given the Legislature's silence on this matter and applying the rule of lenity, I conclude that the Legislature has not clearly authorized multiple punishments for felony murder and its predicate felony. Because it has not, Frazier's dual conviction of both kidnapping and felony murder predicated on kidnapping runs afoul of the Fifth Amendment to the U.S. Constitution. Accordingly, I agree that we must vacate Frazier's conviction of kidnapping.

**C. Unitary Conduct Depends upon the Harm Proscribed by the Statute at Issue**

{63} I agree entirely with the majority's recognition that double jeopardy precludes a defendant from being convicted of both felony murder and its predicate. *See* Maj. Op. ¶¶ 20, 23. Interestingly, in *Jackson,* a habeas case decided soon after *Contreras,* we implicitly understood *Contreras* to hold exactly what the majority does now. *See* 1996–NMSC–054, 122 N.M. 433, 925 P.2d 1195. It appears that *Jackson* has never been cited for this proposition. Despite my admiration of the majority opinion, I find it necessary to discuss why I believe *Swafford,* or at least our interpretation of that case, is inconsistent with United States Supreme Court precedent.

{64} The determination under *Swafford* of whether a defendant's conduct underlying

each charge is unitary has served as a substitution for an analysis of whether that conduct is part of the "same act or transaction" pursuant to *Brown. See Brown*, 432 U.S. at 169–70, 97 S.Ct. 2221. That is, we implicitly determined that whether a defendant's conduct underlying two charges is the "same act or transaction" depends on whether that same conduct is "unitary." All things being equal, this would be a mere question of semantics. However, the framework we erected in *Swafford* on the unitary-conduct question focused our analytical scope too narrowly.

{65} In *Swafford*, we partly relied upon a law review article to fashion our two-part test. *Swafford*, 112 N.M. at 13, 810 P.2d at 1233 (citing George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U. Pitt. L.Rev. 1, 12–25 (1985)). Professor Thomas argued that the question of whether double jeopardy is violated under the multiple punishment prong hinges on three components: (1) whether the conduct is unitary; (2) whether the statutes proscribe the same conduct; and (3) whether the legislature authorized multiple punishments. *See* Thomas, *supra*, at 5–8. Professor Thomas further acknowledged, however, that "[t]he same offense definitional issue contains the first two 'component issues': (1) whether the underlying conduct was unitary, and (2) whether the statutory definitions are the same." *Id.* at 11. This observation tracks Supreme Court precedent. That is, Professor Thomas simply reiterated what I have already discussed—that to determine whether two offenses are the same for purposes of double jeopardy, courts must determine: (1) whether the conduct underlying each was part of the "same act or transaction" (*i.e.*, whether the conduct is unitary); and (2) whether the

elements of one charge are subsumed within the other.

{66} *Swafford,* a double-description case, read the unitary-conduct question to mean that "if the defendant commits two discrete acts violative of the same *statutory* offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." 112 N.M. at 13, 810 P.2d at 1233 (emphasis added). Besides not recognizing *Brown*, one error made in *Swafford* was that the Court conflated the unit-of-prosecution issue with the double-description issue. That is, assuming it true that double jeopardy is not violated if a defendant is punished for multiple violations of the "same *statutory* offense" (*i.e.*, the exact same statute) so long as the defendant's actions are "separated by sufficient indicia of distinctness," this does not mean that there is no double jeopardy violation when a defendant is punished twice for a greater- and lesser-included offense under the same circumstances.[4] In other words, *Swafford* incorrectly assumed that if one of the charges is a lesser-included offense of the other, this is the same thing as saying that they are the "same *statutory* offense." By doing so, the court was able to temporally and spatially divide the defendant's actions into discrete units. *See also id.* (observing in a double-description case that "the double jeopardy clause clearly cannot operate to prohibit prosecution, conviction, and punishment in a single trial for discrete acts violative of the *same statute* " (emphasis added)).

{67} In his article, however, Professor Thomas recognized that, in accordance with *Brown*, whether a defendant's conduct underlying each charge is unitary with another is wholly dependent on the conduct the legislature intended to proscribe:

---

**4.** Importantly, though, according to Supreme Court precedent whether the conduct underlying each charged offense—even if the same statute, and thus a unit-of-prosecution case—is part of the "same act or transaction" depends upon what conduct the Legislature intended to proscribe—not simply upon the temporal or spatial separation between the defendant's discrete actions. *See Sanabria*, 437 U.S. at 70, 98 S.Ct. 2170 ("Whether a particular course of conduct involves one or more distinctive 'offenses' under the statute depends on ... congressional

choice."); *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (holding that the defendant could only be charged once for multiple violations of one provision of the Fair Labor Standards Act because Congress only intended to punish "a course of conduct"); *see also, e.g., State v. Hutchinson*, 99 N.M. 616, 624, 661 P.2d 1315, 1323 (1983) (describing kidnapping as a continuous offense and stating that "[a]cts and deeds that emanate from the kidnapping become a part of the act as long as the kidnapping continues").

[T]he unitary conduct question is not whether the physical actions of the accused are discrete—they clearly were in *Brown*—but is, instead, whether the actions constitute a single course of conduct prohibited by the statute. If the defendant's separate physical acts are committed within the scope of that legislatively defined course of conduct, the conduct is unitary for purposes of the double jeopardy clause.

Thomas, *supra,* at 18 (footnote omitted); *see also id.* at 19 n. 95 (stating that whether conduct is unitary "ultimately depend[s] on determining the precise harm proscribed by the statutes at issue rather than analyzing the defendant's physical actions"); *id.* at 20 ("[T]he unitary conduct issue depends entirely on what the legislature intended to be the unit of conviction, rather than on a space-time analysis of the defendant's physical actions." (footnote omitted)). Thus, by misreading Professor Thomas's law review and inadvertently conflating the double-description and unit-of-prosecution issues, *Swafford* read the unitary-conduct question too narrowly.

{68} I also note that because we mistakenly believed in *Swafford* that whether a defendant's charged conduct is unitary is largely contingent upon a spatial and temporal analysis of the defendant's conduct, we stated that the United States Supreme Court "assumed" that the rape and murder in *Whalen* were part of a single criminal episode. *See Swafford,* 112 N.M. at 13, 810 P.2d at 1233. In fact, the Supreme Court did not make this assumption. Rather, it simply recognized that the conduct underlying the predicate felony of a felony-murder charge is necessarily unitary with the murder. This is because a felony-murder statute, by its very nature, requires that the murder occur *during* the commission of the predicate felony. This, in turn, necessarily means that the two events are part of the "same act or transaction" since the felony-murder statute proscribes a course of conduct that necessarily includes the conduct underlying the predicate felony. Thus, because it comports with Supreme Court precedent, I would adopt the view that a determination of whether a defendant's conduct underlying each charge is unitary

*always* depends solely upon what course of conduct our Legislature proscribed—not simply upon the discrete physical acts or objectives of the defendant. *See* Thomas, *supra,* at 23–25 ("The unitary conduct determination is made by comparing the defendant's conduct to the basic unit of conviction defined by the statute or statutes in question and tempering the result with the rule of lenity." (footnote omitted)).

{69} While I agree that *Swafford* referred to legislative intent in discussing both the "same offense" and intent to punish questions, *see* Maj. Op. ¶ 24, our long line of subsequent precedent has undoubtedly construed *Swafford* to mean that we do not consider legislative intent at all *unless* we first determine that a defendant's conduct was unitary in time and space. In the felony-murder context alone, we have done so in at least eight published opinions. *See State v. Bernal,* 2006–NMSC–050, ¶ 11, 140 N.M. 644, 146 P.3d 289; *State v. DeGraff,* 2006–NMSC–011, ¶ 31, 139 N.M. 211, 131 P.3d 61; *State v. Barrera,* 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177; *State v. Foster,* 1999–NMSC–007, ¶ 35, 126 N.M. 646, 974 P.2d 140; *State v. Mora,* 1997–NMSC–060, ¶ 71, 124 N.M. 346, 950 P.2d 789; *State v. Livernois,* 1997–NMSC–019, ¶ 22, 123 N.M. 128, 934 P.2d 1057; *State v. Kersey,* 120 N.M. 517, 523, 903 P.2d 828, 834 (1995); *State v. Ortega,* 112 N.M. 554, 571, 817 P.2d 1196, 1213 (1991).

{70} This is how I would summarize a modification of *Swafford* to bring our double-jeopardy jurisprudence in line with United States Supreme Court precedent. The general rule is that multiple punishments for the "same offense" violate the Double Jeopardy Clause unless our Legislature has clearly authorized otherwise. To ascertain whether two charges are the "same offense," a court must first determine if, pursuant to the *Blockburger* same-elements test, one charge is subsumed by the elements of the other. If so, the court must then determine if the conduct underlying each charge is part of the "same act or transaction," that is, if the conduct is unitary. Of course, if the two charges are statutorily the same (a unit-of-prosecution case) one need only answer the

unitary-conduct question to determine whether the charges are the "same offense." Whether the defendant's conduct is unitary depends *entirely* on what conduct the Legislature intended to proscribe—not on a simple analysis of the spatial and temporal division between the defendant's actions or the type of force used to commit each act. If a charge is a lesser-included offense of the other and if the defendant's conduct underlying each charge is part of the "same act or transaction," then the two offenses are the "same offense" and a court must then determine whether our Legislature clearly authorized multiple punishments for that "same offense." Under the rule of lenity, statutory silence and ambiguity on this question is construed in favor of the defendant. If our Legislature did not clearly authorize multiple punishments, then the lesser of the defendant's convictions must be reversed.

{71} Although in the final analysis I am suggesting a further deviation from our existing precedent than the majority contemplates, "we are bound by the United States Supreme Court's interpretation of the United States Constitution, and we must endeavor to refrain from unduly encroaching on the functions of the legislative branch of this State." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 2002–NMSC–009, ¶ 27, 132 N.M. 156, 45 P.3d 876. *See also State ex rel. Serna v. Hodges*, 89 N.M. 351, 354, 552 P.2d 787, 790 (1976) (recognizing that Supreme Court precedent interpreting the U.S. Constitution is "binding upon us"), *overruled in part on other grounds by State v. Rondeau*, 89 N.M. 408, 412, 553 P.2d 688, 692 (1976); *see also State v. Martinez*, 2002–NMSC–008, ¶ 64, 132 N.M. 32, 43 P.3d 1042 (Serna, C.J., dissenting) ("This Court cannot reinterpret the federal constitution contrary to Supreme Court precedent."); *cf. Dixon*, 509 U.S. at 712, 113 S.Ct. 2849 ("Although *stare decisis* is the 'preferred course' in constitutional adjudication, 'when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent.'" (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991))). Furthermore, it is important to point out that prosecutors will typically not have their hands tied. For instance, as happened in this case, a prosecutor may still charge a defendant with felony murder and several other felonies, only one of which is the predicate to the felony murder. In such a scenario, the defendant could still be convicted of felony murder and all of the non-predicate felonies—with sentences on all or some of those non-predicate felonies running consecutively to his or her life sentence for first-degree murder. *See, e.g., Meeks v. State*, 604 So.2d 748, 753 (Miss.1992) ("It may well be that the prosecution could have achieved the practical end it here defends through other means. Had it selected burglary as the underlying felony incident to the capital murder charge and left the kidnapping ... wholly aside from that charge, likely separate prosecution and double conviction would stand." (citation omitted)).

{72} Frazier was unconstitutionally twice punished for the "same offense" when he was convicted of both kidnapping and felony murder predicated on kidnapping. The elements of kidnapping were subsumed within the elements of felony murder predicated on kidnapping. Because the felony-murder statute proscribes killings that occur during the course of any felony, and because Frazier's felony-murder charge was contingent upon the kidnapping, Frazier's conduct underlying the kidnapping and murder of Knolls was unitary. That is, the conduct underlying both charges was part of the "same act or transaction." Thus, Frazier's kidnapping and felony-murder charges were the "same offense." Double jeopardy was violated by his dual convictions of these charges since our Legislature has not clearly authorized multiple punishments in such situations. Accordingly, I would also vacate Frazier's conviction of kidnapping. However, because I would go further and actually modify *Swafford* to bring it into conformity with the United States Supreme Court's precedent on double jeopardy, I specially concur with Justice Bosson's well-written opinion.